# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-3640

_____

Walled Mazin Agha; Gina Magigi Agha

*Petitioner*s

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: January 13, 2014
Filed: February 19, 2014

_____

Before WOLLMAN and SHEPHERD, Circuit Judges, and WEBBER,[1] District
Judge.

_____

WEBBER, District Judge.

---

[1]The Honorable E. Richard Webber, Senior United States District Judge for the
Eastern District of Missouri, sitting by designation.

Walled Mazin Agha (Agha) and his wife, Gina Magigi Agha,[2] petition for review of an order of the Board of Immigration Appeals (BIA), which affirmed the denial of Agha's application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We deny the petition.

I.

Agha, a man of Palestinian origin, was born in Lebanon in 1973 after his family fled Palestine in 1948. He came to the United States in December 1998 on a visitor visa, with permission to stay until June 28, 1999. Agha remained in the United States beyond the authorized time, and on July 9, 2003, the Department of Homeland Security (DHS) issued a Notice to Appear, commencing removal proceedings against him. Agha sought relief in the form of asylum, withholding of removal, and CAT protection.[3]

In his asylum statement, Agha averred he is not a citizen of Lebanon, and, although he received a Lebanese travel document for Palestinian refugees, he has never used it. He stated civil war broke out in Lebanon a few years after his birth, and his family therefore fled to Abu Dhabi in the United Arab Emirates (UAE), where he lived comfortably for most of his life, except when traveling to pursue his education. Agha further contended, in 1997, his father became involved in a business dispute between a Canadian company and a UAE Sheikh, who was also the son of the Crown Prince. Agha maintained his father went to Canada to sue the Canadian company in December 1998; the Canadian company then approached the Sheikh, informing him that Agha's father was "ruining" the Sheikh's reputation with the

---

[2]Gina Magigi Agha participates in this case solely as a derivative beneficiary of her husband's petition. Thus, we provide no separate analysis for Gina Magigi Agha.

[3]The timeliness of Agha's asylum application is not at issue.

lawsuit. Agha alleged the Sheikh then confronted his father's business partner, Naser Al Shamsi, who also happened to be the head of the UAE's secret services, and demanded Al Shamsi arrest Agha's father if he returned to the country. Al Shamsi apprised Agha's mother of this situation, and Agha and his family immediately fled Abu Dhabi for Dubai.

Agha used an Indian passport to travel from Dubai to the United States. Throughout his removal proceedings, Agha denied he has Indian citizenship, stated he has never been to India, and maintained his father unlawfully obtained this passport from a friend who was an Indian ambassador. Agha claimed he is considered stateless everywhere in the world.

Agha's asylum application was referred to the Immigration Court, where Dr. Victor T. LeVine, a professor of political science at Washington University in Saint Louis, testified regarding possible harm Agha would face in Lebanon and other places in the Middle East, as well as his prospect of being accepted into various countries designated for removal. Dr. LeVine also opined the business dispute involving the Sheikh would render return to the UAE dangerous for Agha. When Agha began to testify regarding his father's business dispute in the UAE, counsel for the DHS objected on the basis of relevance. The Immigration Judge, John Duck, then stated, "You're starting to show you can't return to the United Arab Emirates. You so stipulate. That's out," to which counsel for the DHS responded, "That's out. He's not going to be removed to the United Arab Emirates." Counsel for Agha then stated, "All right. Thank you."

On March 26, 2007, Judge Duck issued an oral order denying Agha's claims for asylum, withholding of removal, and CAT protection. Judge Duck stated Agha was a credible witness, but found he showed neither past persecution, nor a well-founded fear of future persecution, in either India, the country of his passport, or Lebanon, the country of his birth. Judge Duck further designated India as Agha's

country of removal due to his Indian passport. He added, however, "[Agha] indeed may well be what he said earlier that he is stateless." Agha appealed to the BIA, arguing, *inter alia*, Judge Duck "erred in failing to fully analyze [Agha's] statelessness as it relates to his case for political asylum and related relief." Agha also maintained Judge Duck erred in finding he failed to establish a well-founded fear of persecution.

On March 6, 2009, the BIA remanded the case, finding Judge Duck failed to properly designate a country of removal.[4] The BIA explained,

> [Judge Duck] designated India as the country of removal for the lead respondent because he possesses an Indian passport[.] [Judge Duck's] analysis does not comport with section 241(b)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(2), however. See also Jama v. Immigration & Customs Enforcement, 543 U.S. 335, 341 (2005) (setting out the steps[5] for determining an alien's country of removal under 8 U.S.C. § 1231(b)(2)).

---

[4]The BIA reissued its order on April 21, 2009, solely to correct a clerical error.

[5]In Jama, the Supreme Court described these steps as follows:

> The statute thus provides four consecutive removal commands: (1) An alien shall be removed to the country of his choice . . . ; (2) otherwise he shall be removed to the country of which he is a citizen . . . , unless one of the conditions eliminating that command is satisfied; (3) otherwise he shall be removed to one of the countries with which he has a lesser connection . . . ; or (4) if that is impracticable, inadvisable, or impossible, he shall be removed to another country whose government will accept the alien into that country[.]

543 U.S. at 341 (internal quotations omitted).

The BIA remanded the case "for consideration of [Agha's] country of removal and any other issues that are impacted by that analysis."

Pursuant to the BIA's directive, Agha testified at a hearing, before a different Immigration Judge, Quynh Bain, as to his connections with various countries. On April 26, 2011, Judge Bain certified to the BIA an order amending Judge Duck's designated countries of removal. At the outset, Judge Bain noted, "The parties agreed that no additional testimony should or would be taken concerning [Agha's] underlying asylum and protection claims." Judge Bain then designated new countries of removal as Dubai, the Palestinian Territory, Lebanon, the UAE, India, Ecuador,[6] and any other country whose government would accept Agha. She concluded by informing the BIA, "[Agha] was advised that no separate notice of appeal [wa]s required to preserve his right to appeal the designation issue in tandem with [his] appeals of the other aspects of the immigration judge's March 26, 2007 removal orders."

Agha again appealed to the BIA, reasserting his previous claims that Judge Duck erred in denying asylum. On October 11, 2012, the BIA dismissed the appeal. The BIA first found Agha failed to demonstrate past persecution, and he therefore lacked entitlement to a presumption of persecution; rather, he bore the burden of demonstrating a well-founded fear of future persecution. Bushira v. Gonzales, 442 F.3d 626, 631 (8th Cir. 2006). The BIA concluded Agha had not met this burden either, explaining, "[Agha's] expert testified only about general issues of discrimination [Agha] might face should he be returned to various countries[.]" Finally, the BIA held Judge Bain correctly designated potential countries of removal. Agha now seeks judicial review, challenging the BIA's order denying asylum, withholding of removal, and CAT protection.

_____

[6]Ecuador has been designated as the country of removal for Gina Magigi Agha.

II.

Agha challenges the denial of relief on his asylum, withholding of removal, and CAT protection claims. Where, as here, the BIA has adopted the Immigration Court's opinion and added reasoning and analysis of its own, we review both decisions. Krasnopivtsev v. Ashcroft, 382 F.3d 832, 837 (8th Cir. 2004). This court reviews legal determinations de novo, and factual findings for substantial evidence. Nadeem v. Holder, 599 F.3d 869, 872 (8th Cir. 2010); see also Iyamba v. I.N.S., 244 F.3d 606, 607-08 (8th Cir. 2001). Reversal under a substantial evidence standard requires evidence "so compelling that no reasonable fact-finder could fail to find for" Agha. Nadeem, 599 F.3d at 872; see also Rife v. Ashcroft, 374 F.3d 606, 610 (8th Cir. 2004).

"The Attorney General may confer asylum on any refugee." Regalado-Garcia v. I.N.S., 305 F.3d 784, 787 (8th Cir. 2002) (citing 8 U.S.C. § 1158). A refugee is a person unable or unwilling to return to his country of nationality, or, in the case of a stateless person, to the country in which he last habitually resided, "because of persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). See Khrystotodorov v. Mukasey, 551 F.3d 775, 781 (8th Cir. 2008). "Persecution is the infliction or threat of death, torture, or injury to one's person or freedom[.]" Regalado-Garcia, 305 F.3d at 787. An applicant who fails to prove past persecution bears the burden of establishing a well-founded fear of future persecution. Bushira, 442 F.3d at 630-31. "A well-founded fear of future persecution is one that 'is both subjectively genuine and objectively reasonable.'" Id. (quoting El-Sheikh v. Ashcroft, 388 F.3d 643, 646 (8th Cir. 2004)).

"A request for withholding of removal is automatically included in an application for asylum." Khrystotodorov, 551 F.3d at 781 (citing 8 C.F.R. § 1208.3(b)). "Removal to a specific country must be withheld if the alien established

a 'clear probability' of persecution in that country." Rife, 374 F.3d at 613; see also Garcia-Colindres v. Holder, 700 F.3d 1153, 1158 (8th Cir. 2012). Meeting the "clear probability" standard for withholding of removal is more onerous than establishing the well-founded fear of persecution required for asylum. Rife, 374 F.3d at 613. Thus, if an applicant fails to demonstrate eligibility for asylum, he necessarily fails to demonstrate eligibility for withholding of removal. Khrystotodorov, 551 F.3d at 781.

To qualify for relief under the CAT, an alien must show "it is more likely than not that he or she would be tortured if returned to the proposed country of removal." Malonga v. Mukasey, 546 F.3d 546, 554-55 (8th Cir. 2008) (quoting 8 C.F.R. § 1208.16(c)(2)). Under the CAT, "torture" is defined as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1). In a sense, this standard is more onerous than the asylum and withholding of removal standards. Mouawad v. Gonzales, 485 F.3d 405, 413 (8th Cir. 2007). "[F]or example, 'persecution' for the purposes of asylum and withholding of removal may encompass abuse that is less severe than 'torture' for the purposes of the CAT." Id. However, the CAT standard is less onerous "in the sense that there is no need to show fear of future harm on the basis of any statutorily defined ground." Khrystotodorov, 551 F.3d at 782. A separate analysis for CAT

protection is required only if the evidence of torture is unrelated to the asserted grounds for asylum and withholding of removal. Id. at 784.

## III.

Agha contends the BIA committed reversible error when it failed to determine his nationality, or lack thereof, as a predicate to determining his eligibility for asylum. Specifically, Agha maintains the BIA must determine his nationality or statelessness before determining his eligibility for asylum, pursuant to the plain language of 8 U.S.C. § 1101(a)(42)(A):

> The term 'refugee' means . . . any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]

Agha explains, based on this statutory language, only upon designating his nationality or statelessness can the BIA decide whether he has a well-founded fear of persecution in "that country." 8 U.S.C. § 1101(a)(42)(A). Additionally, Agha argues, even if the BIA implicitly found him stateless, it failed to make the requisite determination of where he last "habitually resided." Id.

"[T]his court has jurisdiction to determine preliminary jurisdictional issues." Vasquez-Velezmoro v. I.N.S., 281 F.3d 693, 695 (8th Cir. 2002). Under 8 U.S.C. § 1252(d)(1), we have jurisdiction to review final orders of removal only if "the alien has exhausted all administrative remedies available to the alien as of right[.]"

Although this provision only refers to administrative "remedies," we have held "that Congress likely intended by enacting § 1252(d)(1) . . . to require that an alien not only pursue all stages of administrative review, but also raise all issues before the agency." Frango v. Gonzales, 437 F.3d 726, 728 (8th Cir. 2006); see also Etchu-Njang v. Gonzales, 403 F.3d 577, 581-83 (8th Cir. 2005). Thus, as a matter of statutory law, Agha may appeal only issues he exhausted at the administrative level.

Moreover, "[r]egardless of whether § 1252(d)(1) precludes us from addressing unexhausted issues, a court-imposed exhaustion requirement is appropriate here." Frango, 437 F.3d at 728. "Where the parties are expected to develop the issues in an adversarial administrative proceeding, . . . the rationale for requiring issue exhaustion is at its greatest." Sims v. Apfel, 530 U.S. 103, 110 (2000). In other words, "[t]he strongest case for imposing an exhaustion requirement exists where the administrative proceedings closely resemble a trial." Frango, 437 F.3d at 728. Here, the administrative proceedings before both the Immigration Court and the BIA were adversarial, and Agha was represented by counsel. Thus, a court-imposed exhaustion requirement is proper, in addition to the statutory requirement.

When Agha appealed to the BIA, he failed to articulate his instant argument; he did not assert entitlement to a threshold determination of his nationality or statelessness. Rather, in his appeal, Agha stated,

> [Judge Duck] erred in failing to fully analyze [Agha's] statelessness as it relates to his case for political asylum and related relief. The statelessness detailed by the testimony of [Agha] (whom [Judge Duck] specifically found credible) and the testimony of the expert witness does not exist in a vacuum. It alone could provide the basis for an asylum claim, but in this case it is relevant, too, because the only country with any realistic possibility of accepting him is Lebanon. . . . [T]he treatment of those Palestinian refugees that are accepted into Lebanon amounts to

persecution on account of their nationality, (imputed or real) political opinion, or membership in a particular social group.

These statements make clear, at the administrative level, Agha argued Judge Duck should have granted him asylum because his statelessness served as an independent ground for asylum, or, in the alternative, because no country would accept him except Lebanon, which would persecute him on the basis of his Palestinian status. These positions stand in stark contrast to Agha's current argument that he is entitled to a determination of his nationality, or lack thereof, as a predicate to a determination of his asylum eligibility. Agha had proceedings before two separate Immigration Judges, and appealed twice to the BIA; in none of these circumstances did he articulate the argument he now presents. In light of the foregoing, we conclude Agha failed to procedurally exhaust his first argument with sufficient clarity to allow the agency "an opportunity to correct its own mistakes[.]" Liadov v. Mukasey, 518 F.3d 1003, 1006 (8th Cir. 2008) (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992) (superseded by statute on other grounds)). Accordingly, we lack jurisdiction to review the merits of Agha's first argument on appeal, because it has been waived.

IV.

In his second argument on appeal, Agha argues the BIA incorrectly found he failed to show a well-founded fear of future persecution based on his status as a Palestinian refugee, or, in the alternative, his Palestinian nationality.[7] Specifically, Agha contends the BIA disregarded Dr. LeVine's testimony establishing he would face danger in Lebanon based on his Palestinian status, he would face harm in the

---

[7]Agha does not argue the BIA erred in concluding he failed to establish past persecution. Therefore, "[l]acking the presumption that proof of past persecution creates, [Agha] must persuade us that no reasonable factfinder could fail to find on this administrative record the requisite well-founded fear of future persecution[.]" Pavlovich v. Gonzales, 476 F.3d 613, 618 (8th Cir. 2007).

UAE due to his father's business dispute with the Sheikh, and any country of removal would likely seek refoulement[8] to Lebanon, where he would face persecution. In sum, Agha contends, because he is stateless, he cannot avail himself of the protection of any government.

Respondent counters substantial evidence supports the BIA's conclusion that Agha failed to show a well-founded fear of persecution. Respondent contends Dr. LeVine testified regarding only widespread discrimination and harassment, and such nonspecific allegations of persecution do not qualify Agha for asylum. Additionally, Respondent argues the possibility a particular country will not accept Agha does not constitute persecution, and statelessness alone fails to establish eligibility for asylum.

A well-founded fear of future persecution must be both "subjectively genuine and objectively reasonable." El-Sheikh, 388 F.3d at 646. "[T]he harm suffered must be particularized to the individual rather than suffered by the entire population." Mohamed v. Ashcroft, 396 F.3d 999, 1003 (8th Cir. 2005). In general, harm resulting from conditions such as anarchy, civil war, or mob violence does not support a claim of persecution. Id.

We find the BIA's conclusion is supported by substantial evidence, and the record would not compel a reasonable fact-finder to find for Agha. See Rife, 374 F.3d at 610. Even accepting Agha and Dr. Levine's testimony as true,[9] Agha failed to establish a well-founded fear of persecution. Dr. LeVine testified only to general,

---

[8]According to Dr. LeVine, refoulement is "the forcible refusal of a country to admit a refugee."

[9]Agha asserts the BIA expressly found both himself and Dr. LeVine credible, and the entirety of their testimony is therefore presumed to be true. Respondent does not attempt to discredit their testimony, and, therefore, for purposes of this appeal, we accept Agha and Dr. LeVine's testimony as true.

widespread discrimination in Lebanon, stating, for example, "Unemployment is widespread amongst the Palestinian population," and opining Palestinians have "[v]ery few" rights in Lebanon.[10]   Similarly, Dr. LeVine's cursory testimony regarding the UAE business dispute[11] fails to compel a finding for Agha. Presumably to compensate for this inadequacy, Agha takes issue with Judge Duck's refusal to hear Agha's own testimony about the business dispute.  On this point, we note Agha neither objected to this decision at the Immigration Court, nor raised this point in either of his two appeals to the BIA; he therefore waived this argument, as well.

We also reject Agha's argument he is entitled to asylum because, as a stateless person, no government will accept him.  The plain language of 8 U.S.C. § 1101(a)(42)(A) requires a stateless person to show the same well-founded fear of persecution as an individual with a nationality.  See Amin v. Ashcroft, 388 F.3d 648, 651 (8th Cir. 2004) ("[S]tatelessness . . . would not by itself be evidence of past persecution."); Faddoul v. I.N.S., 37 F.3d 185, 190 (5th Cir. 1994) ("Section [1101(a)(42)(A)] clearly indicates that stateless individuals must demonstrate the same well-founded fear of persecution as those with nationalities.").  Therefore, the decision to deny asylum was supported by substantial evidence, and the evidence in the administrative record is not so compelling that no reasonable factfinder would be forced to conclude otherwise.

Because Agha failed to establish eligibility for asylum, he necessarily cannot meet the more rigorous standard for withholding of removal.  See Khrystotodorov, 551 F.3d at 784; Rife, 374 F.3d at 613.  Additionally, because Agha relies on the

---

[10]Because we conclude Agha failed to establish a well-founded fear of persecution in Lebanon, we need not address whether refoulement to Lebanon constitutes persecution for purposes of Agha's asylum application.

[11]Whether the business dispute constitutes a protected ground for asylum is not an issue currently before us.

same evidence to support his claim of protection under the CAT, we conclude he has failed to demonstrate he would more likely than not be tortured in any of the countries designated for removal.

V.

Finally, Agha argues the BIA violated his due process rights under the Fifth Amendment of the United States Constitution. Reasserting his prior arguments, Agha contends the BIA erred, first, by failing to determine his nationality or statelessness, and, second, by disregarding Dr. LeVine's testimony, resulting in prejudice.

"To demonstrate a violation of due process, an alien must demonstrate both a fundamental procedural error and that the error resulted in prejudice." Lopez v. Heinauer, 332 F.3d 507, 512 (8th Cir. 2003). "Prejudice" requires "a showing that the outcome of the proceeding may well have been different had there not been any procedural irregularities." Tun v. Gonzales, 485 F.3d 1014, 1026 (8th Cir. 2007).

Agha's due process arguments directly mirror his substantive issues, previously discussed. To the extent Agha attempts to cloak his unexhausted arguments in constitutional terms, he cannot succeed. See, e.g., Frango, 437 F.3d at 728-29 (imposing exhaustion requirement on petitioner's argument he was denied due process). Having appealed to the BIA twice, Agha had two opportunities to assert a right to a threshold designation of nationality or statelessness; nor did he object in this regard before either Immigration Judge. As to Agha's second argument, because we find the BIA's conclusion was supported by substantial evidence, we cannot conclude it deprived Agha of his due process rights under the Fifth Amendment of the United States Constitution.

-13-

## VI.

Accordingly, we deny the petition for judicial review.

_____