**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-2027

KHALID ABDEL WHAB MOHAMED,

                    Petitioner,

          v.

ERIC H. HOLDER, JR., Attorney General,

                    Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: September 19, 2014          Decided: October 17, 2014

Before TRAXLER, Chief Judge, NIEMEYER, Circuit Judge, and DAVIS, Senior Circuit Judge.

Petition for review granted; reversed and remanded with instructions by published opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Traxler and Senior Judge Davis joined.

**ARGUED:** Steven Harris Goldblatt, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Petitioner. Bernard Arthur Joseph, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Rita K. Lomio, Supervising Attorney, Lola A. Kingo, Supervising Attorney, Tiffany L. Ho, Student Counsel, David A. Kronig, Student Counsel, Philip Young, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Petitioner. Stuart F. Delery, Assistant Attorney General, Civil Division, Jamie M. Dowd,

Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

NIEMEYER, Circuit Judge:

Khalid Mohamed, a citizen of Sudan, was ordered removed by the Board of Immigration Appeals ("BIA") on the ground that he had been convicted of two crimes "involving moral turpitude" -- a 2010 conviction for sexual battery, in violation of Va. Code Ann. § 18.2-67.4, and a 2011 conviction for failing to register as a sex offender, in violation of Va. Code Ann. § 18.2-472.1. See 8 U.S.C. § 1227(a)(2)(A)(ii) (rendering deportable an alien who is convicted of "two or more crimes involving moral turpitude"). To conclude that the crime of failing to register as a sex offender was a crime involving moral turpitude, the BIA relied on its prior decision in Matter of Tobar-Lobo, 24 I. & N. Dec. 143 (BIA 2007), which so held.

In his petition for review, Mohamed contends that his failure to register as a sex offender was not a crime involving moral turpitude and that Tobar-Lobo was an unreasonable interpretation of § 1227(a)(2)(A)(ii). Because we agree, we grant Mohamed's petition for review, reverse the BIA's ruling, and remand with instructions to vacate the order of removal.

I

Mohamed, who was born in Sudan in 1980, entered the United States as a lawful permanent resident in 2003. In 2010, while living in Virginia, he pleaded guilty to sexual battery, having

3

been charged with "sexually abusing . . . a female child 17 years of age . . . by force, threat, intimidation, [or] ruse," in violation of Va. Code Ann. § 18.2-67.4. In 2011, he was convicted of failing to register as a sex offender, in violation of Va. Code Ann. § 18.2-472.1.

Following Mohamed's second conviction, the Department of Homeland Security sought his removal, contending that Mohamed's two convictions were for crimes involving moral turpitude and that Mohamed was therefore deportable under 8 U.S.C. § 1227(a)(2)(A)(ii). Before an immigration judge ("IJ"), Mohamed conceded that his sexual battery conviction involved moral turpitude, but he maintained that his conviction for failure to register as a sex offender did not involve moral turpitude and that therefore he was not removable. He also applied for cancellation of removal under 8 U.S.C. § 1229b(a), arguing that his sexual battery conviction was not for a "crime of violence" and therefore was not an "aggravated felony" that would have barred him from relief under § 1229b(a)(3). Recognizing that Mohamed had the burden of supporting his application for cancellation of removal and finding that the record was "inconclusive as to whether [Mohamed's sexual battery] offense [was] a crime of violence and thus an aggravated felony," the IJ found that Mohamed had failed to carry his burden and denied his application for cancellation.

4

On appeal from the IJ's decision, the BIA dismissed Mohamed's appeal and, by order dated July 19, 2013, ordered his removal. The BIA concluded that Mohamed was removable for having been convicted of two crimes involving moral turpitude, expressly noting that Mohamed's failure to register as a sex offender was a crime involving moral turpitude, as held in Tobar-Lobo, 24 I. & N. Dec. 143. The BIA also concluded that Mohamed had failed to carry his burden of demonstrating that his sexual battery conviction was not an "aggravated felony" for purposes of his cancellation application.

Mohamed filed this petition for review of the BIA's order, challenging both rulings of the BIA.

By order dated September 29, 2014, we directed the government to release Mohamed from custody immediately, indicating that this opinion would provide the basis for our order.

II

Mohamed's order of removal is based on 8 U.S.C. § 1227(a)(2)(A)(ii), which provides that any alien "convicted of two or more crimes involving moral turpitude . . . is deportable." While Mohamed acknowledges that the sexual battery offense for which he was convicted was a crime involving moral turpitude, he argues that his conviction for failing to register as a sex offender does not similarly qualify. According to

5

Mohamed, "[f]ailure to register under Virginia law is a non-penal, regulatory offense, and a conviction may stand even if the defendant simply forgot to register on time, and instead registered a day late." Without two convictions for crimes involving moral turpitude, he asserts that he is not removable.

The government argues that the BIA's interpretation of § 1227(a)(2)(A)(ii) -- that the crime of failing to register as a sex offender is a crime involving moral turpitude -- is based on a permissible construction of the statute and therefore is entitled to deference. It emphasizes the "serious" and "grave" risk to society posed by sex offenders, arguing on that basis that the crime of failure to register is "inherently base or vile" and therefore involves moral turpitude. It urges us to defer to what it considers to be the BIA's reasonable interpretation of § 1227(a)(2)(A)(ii) made in Tobar-Lobo, which held that failing to register as a sex offender is a crime involving moral turpitude. In Tobar-Lobo, the BIA observed that "moral turpitude" refers to "conduct that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general," 24 I. & N. Dec. at 144, and that a failure to register as a sex offender satisfies that definition, "[g]iven the serious risk involved in a violation of the duty owed by this class of offenders to society," id. at 146.

6

The issue we must address, therefore, is whether a violation of Va. Code Ann. § 18.2-472.1 is a crime involving moral turpitude, as that term is used in 8 U.S.C. § 1227(a)(2)(A)(ii). In deciding that question, a court must consider only the statutory elements, not the facts underlying the particular violation of the statute. See Prudencio v. Holder, 669 F.3d 472, 484 (4th Cir. 2012). And resolution of the issue is a question of law that we review de novo. See Salem v. Holder, 647 F.3d 111, 115 (4th Cir. 2011). A court will, however, defer to the BIA's statutory interpretation if the statute is ambiguous and the BIA's interpretation is reasonable. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984); Yousefi v. U.S. INS, 260 F.3d 318, 325-26 (4th Cir. 2001); Am. Online, Inc. v. AT & T Corp., 243 F.3d 812, 817 (4th Cir. 2001).

We begin by noting that, by using the phrase "involving moral turpitude" to define a qualifying crime, Congress meant to refer to more than simply the wrong inherent in violating the statute. Otherwise, the requirement that moral turpitude be involved would be superfluous. It follows, therefore, that a crime involving moral turpitude must involve conduct that not only violates a statute but also independently violates a moral norm. See Tillinghast v. Edmead, 31 F.2d 81, 83 (1st Cir. 1929) (defining "crime involving moral turpitude" as requiring "an act

7

intrinsically and morally wrong and malum in se"). To identify such a crime, we consider whether conduct that violates the statutory proscription also violates a moral norm and thus gives rise to "turpitude" -- meaning the debasement of the norm or the value. See Merriam-Webster's Collegiate Dictionary 1351 (11th ed. 2007) (defining "turpitude"); id. at 101 (defining "base"). Accordingly, we have noted that "moral turpitude" refers generally to "conduct that shocks the public conscience as being inherently base, vile, or depraved." Medina v. United States, 259 F.3d 220, 227 (4th Cir. 2001) (quoting Matter of Danesh, 9 I. & N. Dec. 669, 670 (BIA 1988)); see also Tobar-Lobo, 24 I. & N. Dec. at 144 (defining moral turpitude to mean "conduct that is inherently base, vile, or depraved").

Thus, by way of example, a sexual battery not only violates Virginia's statutory proscription against such conduct but also independently violates a moral norm that a person not commit sexual battery on another person. It is undisputed by the parties that engaging in such conduct would be morally wrong. We thus can conclude that the statutory crime of sexual battery involves moral turpitude separate and apart from the wrong inherent in violating the statutory proscription.

To be sure, the contours of moral norms are not always clear and may often be the subject of legitimate debate. See Padilla v. Kentucky, 559 U.S. 356, 378 (2010) (Alito, J.,

8

concurring in the judgment) ("[D]etermining whether a particular crime is . . . a 'crime involving moral turpitude' is not an easy task"). But that is not the case here.

The statute in question here simply makes it a crime for a person convicted of a sex offense "knowingly [to] fail[] to register" as a sex offender. Va. Code Ann. § 18.2-472.1(A). The registration procedure requires every sex offender to provide the Virginia State Police with specific information about himself and his offenses; to present himself to be photographed; and to submit a DNA sample. See id. § 9.1-903. The information thus provided is made accessible to the public and is intended to reduce the risk of recidivism.

The government focuses mostly on the stated purpose of the registration statute, which is to reduce the risk to society of repeated sex offenses. But the statute's language does not prohibit the repetition of a sex offense. Rather, the statute is a regulatory or administrative provision requiring only registration -- the presentation of information -- by a specific class of persons. Thus, apart from the fact that it is statutorily mandated, we find no moral norm requiring sex offenders to register or to provide information to the community. Moreover, no party has suggested that such a requirement is imposed by any moral norm. While it is true that the purpose of the statute is aimed at reducing the risk of

9

future immoral conduct, failure to comply with the operative elements of the registration statute itself does not violate a recognized moral norm.

The government nonetheless urges us to defer to the BIA's decision in Tobar-Lobo, which held that a violation of a sex-offender registration statute similar to the one in Virginia was a crime involving moral turpitude. And it notes that we have previously concluded that the term "crime involving moral turpitude" is ambiguous. See Yousefi, 260 F.3d at 325-26. Even so, it recognizes that we should defer to a BIA decision only if we also find it reasonable.

In Tobar-Lobo, the BIA held that a violation of California's failure-to-register statute -- a provision similar to Virginia's statute in this case -- was a crime involving moral turpitude. It reasoned that the "serious risk involved in a violation of the duty owed by [sex] offenders to society" rendered a violation of the sex-offender registration statute "inherently base or vile" and therefore that such a violation met "the criteria for a crime involving moral turpitude." Tobar-Lobo, 24 I. & N. Dec. at 146. As the BIA explained:

> Some obligations . . . are simply too important not to heed. . . . [E]ven if "forgotten," an offense based on a failure to fulfill the offender's duty to register contravenes social mores to such an extent that it is appropriately deemed turpitudinous.

Id.

10

While the BIA in <u>Tobar-Lobo</u> rightly recognized the importance of sex-offender registration statutes to the public policy of reducing the rate of recidivism among sex offenders, it failed to focus on the nature of the registration statute itself to determine whether the proscribed conduct involved moral turpitude. In short, it based its conclusion on the statute's <u>purpose</u> and not on the nature of a <u>conviction</u> under the statute. A conviction under the registration statute involves only administrative conduct, not the violation of a moral norm. <u>See</u> <u>In re Alva</u>, 92 P.3d 311, 313 (Cal. 2004) (describing California's sex-offender registration statute as a "regulatory measure[]" that is "designed to assist law enforcement and to protect the public").

The failure to register as a sex offender is much like the failure to register for the military draft, neither of which constitutes a <u>malum</u> <u>in</u> <u>se</u> offense. Laws of this nature simply do not implicate any moral value beyond the duty to obey the law. At bottom, violating a registration law -- particularly Va. Code Ann. § 18.2-472.1 -- is categorically not a crime involving moral turpitude, and the BIA's contrary conclusion, which was based on the statute's purpose, is an unreasonable construction of the statutory language. For this reason, we do not defer to <u>Tobar-Lobo</u>. <u>Accord</u> <u>Totimeh v. Att'y Gen.</u>, 666 F.3d 109, 116 (3d Cir. 2012) ("[T]he BIA's determination that

11

Minnesota's predatory offender registration statute is a crime involving moral turpitude . . . is wrong as a matter of law and is not entitled to <u>Chevron</u> deference"); <u>Efagene v. Holder</u>, 642 F.3d 918, 921 (10th Cir. 2011) ("[T]he BIA's interpretation of moral turpitude to . . . encompass the Colorado misdemeanor offense of failure to register is not a 'reasonable policy choice for the agency to make'" (quoting <u>Chevron</u>, 467 U.S. at 845)).

Because Mohamed's 2011 conviction for failure to register as a sex offender, in violation of Va. Code Ann. § 18.2-472.1, was not a crime involving moral turpitude, the BIA erred as a matter of law in relying on that conviction as a basis to order Mohamed's removal under 8 U.S.C. § 1227(a)(2)(A)(ii). In view of this holding, we do not reach Mohamed's request to review the ruling on his application for cancellation of removal under 8 U.S.C. § 1229b(a).

Accordingly, we grant Mohamed's petition for review; reverse the BIA's decision; and remand with instructions to vacate Mohamed's order of removal.

<u>IT IS SO ORDERED</u>