# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-3011
_____

Tua Mene Lebie Bakor,

*Petitioner*,

v.

William P. Barr, Attorney General of the United States,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 16, 2019
Filed: May 7, 2020

_____

Before COLLOTON, BEAM, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Under the Immigration and Nationality Act, the Attorney General may remove an alien "who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." 8 U.S.C. § 1227(a)(2)(A)(ii). In 2017, the Department of Homeland Security initiated removal proceedings under this provision against Tua Mene Lebie Bakor, an alien

originally from Nigeria. The Board of Immigration Appeals determined that Bakor had been convicted of two crimes involving moral turpitude: Criminal Sexual Conduct in the Fifth Degree in Minnesota, and knowing failure to comply with Minnesota's sex offender registration statute. Bakor argues that neither of these convictions qualifies as a crime involving moral turpitude. We deny the petition for review.

I.

Bakor was admitted to the United States as a refugee in September 1999. Approximately three years later, he became a lawful permanent resident. In 2001, he was convicted of Criminal Sexual Conduct in the Fifth Degree. Minn. Stat. § 609.3451, subdiv. 1. As a result of this conviction, Bakor was obliged to comply with Minnesota's sex offender registration law. In 2015, Bakor failed to comply, and he pleaded guilty to a knowing failure to adhere to registration requirements. Minn. Stat. § 243.166, subdiv. 5(a).

In 2017, the Department initiated removal proceedings against Bakor, alleging that he had been convicted of two crimes involving moral turpitude. *See* 8 U.S.C. § 1227(a)(2)(A)(ii). The immigration court sustained the charge and ordered the Department to remove Bakor to Nigeria.

Bakor appealed the removal order to the Board, arguing through counsel that neither of his previous convictions was for a crime involving moral turpitude. The Board, in a decision by a single member, rejected the argument and dismissed the appeal.

## II.

Congress did not define the ambiguous phrase "crime involving moral turpitude." In reviewing a decision in which the Board relies on a published opinion that interprets the statute, we generally accord deference to the agency's interpretation and uphold its construction as long as it is reasonable. *Chanmouny v. Ashcroft*, 376 F.3d 810, 811 (8th Cir. 2004); *see INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999); *Marmolejo-Campos v. Holder*, 558 F.3d 903, 908-12 (9th Cir. 2009) (en banc). Where the Board's decision comes entirely in an unpublished ruling by a single member, we defer to the ruling insofar as it is persuasive under the rubric of *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). We have not resolved whether a single-member decision, standing alone, is afforded the same level of deference as a published decision under *Aguirre-Aguirre* and *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Estrada-Rodriguez v. Lynch*, 825 F.3d 397, 404 (8th Cir. 2016).

In developing a definition of a crime involving moral turpitude, or "CIMT," the Board has stated that "[t]o involve moral turpitude, a crime requires two essential elements: reprehensible conduct and a culpable mental state." *Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 834 (BIA 2016); *see also Gomez-Gutierrez v. Lynch*, 811 F.3d 1053, 1058 (8th Cir. 2016). We have accepted the Board's characterization of "reprehensible conduct" as "conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Chanmouny*, 376 F.3d at 812 (quoting *In re Ajami*, 22 I. & N. Dec. 949, 950 (BIA 1999)); *see also Gomez-Gutierrez*, 811 F.3d at 1058. We also have upheld the Board's conclusion that while a culpable mental state often involves intent, purpose, or knowledge, a *mens rea* of recklessness sometimes is sufficient. *Franklin v. INS*, 72 F.3d 571, 573 (8th Cir. 1995); *see also Matter of Jimenez-Cedillo*, 27 I. & N. Dec. 1, 3 (BIA 2017) (stating that the culpable mental state for a CIMT can include "specific intent, knowledge, willfulness, or recklessness").

When reviewing a Board decision that a conviction qualifies as a CIMT, we apply the so-called categorical approach. *Reyna v. Barr*, 935 F.3d 630, 632 (8th Cir. 2019). Under that approach, we consider whether the elements of an offense necessarily fit within the Board's generic definitions. *Id.* If the statute of conviction has a "realistic probability" of covering conduct that falls outside the generic definition, then the conviction does not qualify categorically as grounds for removal under 8 U.S.C. § 1227(a)(2)(A)(ii). *Villatoro v. Holder*, 760 F.3d 872, 877-79 (8th Cir. 2014).

## A.

Bakor argues first that his conviction for Criminal Sexual Conduct in the Fifth Degree does not qualify as a conviction for a crime involving moral turpitude. The statute of conviction criminalized nonconsensual sexual contact "performed with sexual or aggressive intent." Minn. Stat. § 609.3451, subdiv. 1 (2001). The statute defined "sexual contact" as "the intentional touching by the actor of the complainant's intimate parts" or "the touching of the clothing covering the immediate area of the intimate parts," but not including the touching of clothing covering the immediate area of the buttocks. *Id.*; Minn. Stat. § 609.341, subdivs. 11(a)(i), (iv) (2001).

This Minnesota offense falls within the generic definition of a CIMT, because the conduct it covers is reprehensible. The Board long has considered nonconsensual sexual contact to be the type of conduct that qualifies as turpitudinous, *see, e.g.*, *Matter of Z–*, 7 I. & N. Dec. 253, 255 (BIA 1956), and we agree with the courts that have accepted this interpretation of the statute. *See Pinzon v. Gonzales*, 175 F. App'x 911, 914 (9th Cir. 2006); *Maghsoudi v. INS*, 181 F.3d 8, 15 (1st Cir. 1999); *United States v. Kiang*, 175 F. Supp. 2d 942, 952 (E.D. Mich. 2001), *aff'd*, 56 F. App'x 696, 698 (6th Cir. 2003).

Bakor offers two counterarguments. First, he asserts that the Minnesota offense does not meet the Board's own standard for sexual offenses set forth in *Matter of Cortes Medina*, 26 I. & N. Dec. 79, 82 (BIA 2013). He contends that *Cortes Medina* requires "lewd or lascivious intent" to classify a sex offense as a CIMT, and that because Bakor's offense may be committed with "aggressive intent," it falls outside the Board's definition. *Cortes Medina*, however, concerned a conviction for indecent exposure to children, and the Board required a showing of lewd or lascivious intent in order to exclude cases that arose merely from "a negligent disregard of the children's presence occasioned by physical necessity." *Id*. at 82-83. Where, as here, an offense involves nonconsensual sexual contact and cannot be committed through mere negligence, the Board properly concluded that an element of lewd or lascivious intent is not necessary for the crime to involve moral turpitude.

Second, Bakor argues that his Minnesota offense is akin to assault. Because assault without injury is not necessarily turpitudinous, *see Alonzo v. Lynch*, 821 F.3d 951, 958-59 (8th Cir. 2016), he asserts that fifth-degree criminal sexual conduct is not either. Bakor emphasizes that the Minnesota statute imposed no requirement that the sexual contact result in bodily injury. *See State v. Ahmed*, 782 N.W.2d 253, 261-62 (Minn. Ct. App. 2010).

The analogy to assault, however, is inapt. We have observed that simple assault is a general intent crime, not necessarily accompanied by a vicious motive, corrupt mind, or evil intent. *Alonzo*, 821 F.3d at 958. And we have recognized that "many simple assault statutes prohibit a wide range of conduct or harm, including de minimis conduct or harm, such as offensive or provocative physical conduct or insults." *Id*. (internal quotation omitted). So determining whether an assault offense is turpitudinous requires an assessment of both the state of mind and the level of harm required to complete the particular offense. Bakor's offense, by contrast, categorically requires "the intentional touching by the actor of the complainant's intimate parts" with "sexual or aggressive intent." Minn. Stat. §§ 609.341,

-5-

subdiv. 11(a)(i); 609.3451, subdiv. 1. Unlike some simple assault offenses, the Minnesota sexual conduct statute is not a general intent crime, and it does not sweep in *de minimis* conduct. The Board correctly concluded that nonconsensual sexual conduct under this statute involves reprehensible conduct committed with a culpable mental state, even if it does not cause bodily injury.

B.

Bakor argues alternatively that his failure to comply with Minnesota's sex offender registration statute was not a crime involving moral turpitude. The statute imposes registration requirements on persons like Bakor who have been convicted of criminal sexual conduct. Minn. Stat. § 243.166, subdiv. 1b(a)(1)(iii) (2015). The law further states that a "person required to register . . . who knowingly violates any of its provisions . . . is guilty of a felony." *Id.* subdiv. 5(a).

The Board held in *In re Tobar-Lobo*, 24 I. & N. Dec. 143 (BIA 2007), that "a willful failure to register by a sex offender who has been previously apprised of his obligation" was morally turpitudinous conduct. 24 I. & N. Dec. at 146-47. Bakor argued before the Board that *Tobar-Lobo* "was wrongly decided," and that the Board should withdraw from it. The Board rejected the argument and applied *Tobar-Lobo* to conclude that Bakor committed a crime involving moral turpitude. Bakor renews his objection on appeal.

*Tobar-Lobo* involved an alien who willfully failed to register under a California sex offender registration statute. The Board reasoned that "the nature of a crime is measured against contemporary moral standards," and observed that "outrage over sexual crimes—particularly those targeting children—has led to the enactment of some form of sex offender registration statute in every state and at the Federal level." 24 I. & N. Dec. at 144-46. A principal purpose of sex offender registration statutes, the Board explained, is "to safeguard children and other citizens

-6-

from exposure to danger from convicted sex offenders, a high percentage of whom are recidivists." *Id.* at 146. The Board concluded, therefore, that "[g]iven the serious risk involved in a violation of the duty owed by this class of offenders to society," the crime of willfully failing to register was inherently base or vile and met the criteria for a crime involving moral turpitude. *Id.*

We conclude that this is a reasonable interpretation of the statute. Whether an offense is reprehensible properly includes consideration of the danger that the crime poses to society at large. Aggravated drunk driving in Arizona, for example, is a crime involving moral turpitude because the offender acts with knowledge that he is absolutely forbidden to drive, but nonetheless places society at great risk through his conduct. *See Marmolejo-Campos*, 558 F.3d at 914-17. An offender who knowingly fails to register as a sex offender similarly evades a regulation that is designed to protect vulnerable victims against recidivist sex offenders, and does so with a culpable mental state. Not every societal duty carries equal weight, and not all failures to comply with administrative requirements have the same moral gravity. Where society has imposed a duty based on a compelling need to protect public safety, it is permissible for the Board to conclude that one who knowingly ignores that duty acts in a morally reprehensible manner. The Board reasonably concluded that knowing and willful failure to register as a sex offender, which frustrates society's efforts to monitor serious offenders and to protect vulnerable victims from predictable recidivism, is the sort of morally turpitudinous criminal conduct that subjects an alien to removal from the country.[1]

---

[1]The dissent, *post*, at 13-14, suggests that because the registration statute has a "regulatory purpose" to assist law enforcement, it is not designed to protect vulnerable victims against recidivist sex offenders. But the regulatory purpose is "to keep law enforcement informed as to a predatory offender's whereabouts," *Kaiser v. State*, 641 N.W.2d 900, 907 (Minn. 2002), so that "society" can "protect itself," including its most vulnerable members. *Id*. at 905 (quoting *Doe v. Poritz*, 662 A.2d 367, 373 (N.J. 1995)).

Bakor argues that *Tobar-Lobo* is an impermissible interpretation of the statute because a crime involving moral turpitude must be *per se* morally reprehensible and intrinsically wrong—*i.e.*, *malum in se*. The line between *malum in se* and *malum prohibitum* (*i.e.*, wrong because prohibited by legislation) is murky and controversial. *See Jordan v. De George*, 341 U.S. 223, 237 & n.10 (1951) (Jackson, J., dissenting). Statutory rape is a crime of moral turpitude, *Marciano v. INS*, 450 F.2d 1022, 1025 (8th Cir. 1971), although it could be categorized as *malum prohibitum* because some of the prohibited conduct would be lawful in other jurisdictions or if the defendant and partner were married. *See* Julia Ann Simon-Kerr, *Moral Turpitude*, 2012 Utah L. Rev. 1001, 1054 & n.385 (2012). One leading treatise suggests that "the violation of a criminal statute can be considered *malum prohibitum* or *malum in se* depending upon the degree of the violation," so perhaps driving twenty miles per hour over the speed limit and driving while heavily intoxicated are *malum in se*, while barely speeding and driving while tipsy are not. 1 Wayne LaFave, *Substantive Criminal Law* § 1.6(b) (3d ed. 2017).

We see no bright line rule that excludes a regulatory offense from the scope of the statute when it involves reprehensible conduct and a culpable mental state. Moral turpitude is "a nebulous concept and there is ample room for differing definitions of the term." *Franklin*, 72 F.3d at 573. Given the compelling societal purpose behind sex offender registration statutes, and the fact that knowing violations of the law facilitate recidivism and frustrate public safety, we are satisfied that the Board permissibly classified a knowing failure to comply as morally turpitudinous. *See Efagene v. Holder*, 642 F.3d 918, 927 (10th Cir. 2011) (O'Brien, J., concurring in the result).

Some courts have criticized *Tobar-Lobo* on a ground not applicable here. *See Totimeh v. Attorney General*, 666 F.3d 109, 115 (3rd Cir. 2012); *Plasencia-Ayala v. Mukasey*, 516 F.3d 738, 747 (9th Cir. 2008), *overruled on other grounds by Marmolejo-Campos*, 558 F.3d at 911. The Board in *Tobar-Lobo* went so far as to say

that merely *forgetting* to register as a sex offender qualified as a CIMT, because "[s]ome obligations, once imparted by proper notification, are simply too important not to heed." 24 I. & N. Dec. at 146 & n.6. Bakor's conviction, however, required proof that he knew of the registration requirement at the time of the violation; a forgetful failure to register would not have sufficed. *State v. Mikulak*, 903 N.W.2d 600, 604 (Minn. 2017). The Third Circuit ruled in 2012 that a violation of the Minnesota registration statute did not qualify as a CIMT, *Totimeh*, 666 F.3d at 115-16, but that court's reasoning cited the potential for a "forgetful" violation, and it has thus been superseded by *Mikulak*. Insofar as *Totimeh* concluded independently that a *knowing* failure to register is not a morally reprehensible act, we disagree for the reasons stated. We are satisfied that the Board permissibly defined a *knowing* failure to register, as applied in Minnesota, as a crime involving moral turpitude. *But see Mohamed v. Holder*, 769 F.3d 885, 890 (4th Cir. 2014).

In his petition for review, Bakor raises other contentions that he did not present to the Board. He argues that the Minnesota registration statute does not qualify as a CIMT because it covers not only offenders who are convicted of sex crimes, but also people who were charged with sex offenses but eventually convicted of lesser offenses "arising out of the same set of circumstances." Minn. Stat. § 243.166, subdiv. 1b(a)(1). And he contends that the Minnesota statute does not meet the statutory criteria because some convictions may be premised on a failure to comply with what he considers to be technical reporting requirements "that are spread across 9 of the statute's 20 subdivisions."[2]

---

[2]The dissent, *post*, at 12 & n.4, focuses on the requirement to register and update the "color" of a sex offender's vehicle, suggesting that a failure to do so is a "minor" matter that is not morally reprehensible. The registration statute requires an offender to register "the year, model, make, license plate number, and color of all motor vehicles owned or regularly driven by the person." Minn. Stat. § 243.166, subdiv. 4a(6). A violation of this provision may not be so minor for a law enforcement officer who is responsible for monitoring a sex offender's white car if

Bakor did not properly exhaust these arguments before the Board, and we therefore do not consider them. An alien must raise all particular issues before the agency, and we will not address points that are raised for the first time on a petition for review. *Agha v. Holder*, 743 F.3d 609, 616 (8th Cir. 2014); *Sultani v. Gonzales*, 455 F.3d 878, 884 (8th Cir. 2006); *Etchu-Njang v. Gonzales*, 403 F.3d 577, 582-83 (8th Cir. 2005); *see* 8 U.S.C. § 1252(d)(1). The exhaustion requirement embodies the "fundamental principle of administrative law that an agency must have the opportunity to rule on a challenger's arguments before the challenger may bring those arguments to court." *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010). To satisfy the requirement, "an alien must present the *same specific legal theory* to the [Board] before he or she may advance it in court." *Id.*; *see Barillas-Mendez v. Lynch*, 790 F.3d 787, 790 (8th Cir. 2015). A less demanding rule would frustrate the purpose of mandating exhaustion by allowing aliens to secure judicial review on legal theories that the agency had no cause to consider. We thus reject Bakor's attempt to raise new theories for the first time on judicial review, and we leave those points for consideration in a future administrative proceeding if raised by another alien. *See Avendano v. Holder*, 770 F.3d 731, 736 (8th Cir. 2014).

\* \* \*

The petition for review is denied.

---

the vehicle is secretly painted black. In any event, Bakor's brief to the Board simply recited in general terms the statutory rule that offenders must provide "information about their primary and secondary addresses, employment, and vehicles they own or operate," and then argued that *Tobar-Lobo* was wrongly decided. A.R. 22-25. He did not contend that the requirement to register and update the color of his vehicle distinguished his case from *Tobar-Lobo*, which involved a requirement to register a license plate number. *See* Cal. Penal Code § 290(e)(2)(C)(1998).

KELLY, Circuit Judge, dissenting.

I disagree that Bakor's violation of Minnesota's registration statute qualifies as a crime involving moral turpitude (CIMT).  And because the government has not shown Bakor is removable for having two or more CIMT convictions, I would grant the petition for review.  See 8 U.S.C. § 1227(a)(2)(A)(ii).

This court employs the categorical approach to determine whether a state offense qualifies as a CIMT.  Gomez-Gutierrez v. Lynch, 811 F.3d 1053, 1058 (8th Cir. 2016).  A state offense is a categorical match "only if a conviction . . . necessarily involved facts equating to the generic federal offense."  Id. (cleaned up).  The noncitizen's actual conduct is irrelevant to this inquiry because the court "must presume that the conviction rested upon . . . the least of the acts criminalized under the state statute."  Id. (cleaned up).  Because Bakor is a lawful permanent resident, the government must show he is removable by clear and convincing evidence.  See 8 U.S.C. § 1229a(c)(3)(A).

When applying the categorical approach, this court defers to the BIA's definition of a CIMT:

> Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.  [It is] an act which is per se morally reprehensible and intrinsically wrong or malum in se.

Gomez-Gutierrez, 811 F.3d at 1058 (citing In re Ajami, 22 I. & N. Dec. 949, 950 (BIA 1999)).  A CIMT has two essential elements:  "a culpable mental state and reprehensible conduct."  Id.  Critically, "it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude."  Id.  At its

-11-

essence, a CIMT involves "conduct that shocks the public conscience." Matter of Danesh, 19 I. & N. Dec. 669, 670 (BIA 1988).

Bakor was convicted of violating Minnesota's sex offender registration statute. See Minn. Stat. § 243.166, subd. 5(a) (2016). That statute imposes many obligations on those required to register with the state. For example, these individuals must provide their primary and secondary addresses; their places of employment; schools they are currently attending; and the year, make, model, license plate number, and color of the cars they own or regularly drive. Minn. Stat. § 243.166, subd. 4a (2016). They must also "immediately" notify authorities of any changes to this information. Id.

The BIA decided that Bakor's conviction for violating Minnesota's registration statute is categorically a CIMT. In my view, this interpretation is unreasonable because "the least of the acts criminalized" by the statute does not involve reprehensible conduct. See Gomez-Gutierrez, 811 F.3d at 1058; see also Reyes-Morales v. Gonzales, 435 F.3d 937, 944 (8th Cir. 2006) (explaining that we defer only to the agency's "reasonable" interpretation of the CIMT statute). The Minnesota statute does not regulate conduct that is "inherently base, vile, or depraved."[3] See Gomez-Gutierrez, 811 F.3d at 1058. Indeed, a person may be convicted for something as minor as not "immediately" updating the authorities about a change in the color of a car that they "regularly" drive."[4] Minn. Stat. § 243.166,

---

[3]I agree with the court that one must "knowingly" violate Minnesota's registration requirements to be convicted under the statute. See Minn. Stat. § 243.166, subd. 5(a) (2016); State v. Mikulak, 903 N.W.2d 600, 603–04 (Minn. 2017). But while this might satisfy the requirement that a CIMT involve "a culpable mental state," it does not affect the separate requirement that a CIMT also involve "reprehensible conduct." See Gomez-Gutierrez, 811 F.3d at 1058.

[4]The court concludes that Bakor failed to exhaust this argument about the Minnesota statute's "technical reporting requirements." Ante at 9–10. I disagree.

subd. 4a(6). Such conduct is hardly morally reprehensible or shocking to the public conscience. Rather, it is wrong merely because it violates a statute. Cf. Efagene v. Holder, 642 F.3d 918, 924 (10th Cir. 2011) (deciding that the conduct criminalized by Colorado's registration statute—including failing to notify law enforcement within five days of changing one's residence—"is *not* conduct society deems inherently base, vile, or depraved, but rather is wrong only because a statute requires the action be taken within five business days" (emphasis added)).

This conclusion is bolstered by Minnesota case law, which characterizes the registration statute as regulatory—not punitive—in nature and designed to assist law enforcement. See State v. Lopez, 778 N.W.2d 700, 704 (Minn. 2010) ("[T]he primary purpose . . . is to create an offender registry to assist law enforcement with investigations."); Matter of Welfare of C.D.N., 559 N.W.2d 431, 433 (Minn. App. 1997) (explaining that the statute "is not punitive because it serves the regulatory purpose of assisting police investigations"). This characterization is crucial because regulatory offenses "are not generally considered" CIMTs. In re Tobar-Lobo, 24 I. & N. Dec. 143, 147 (BIA 2007). In fact, the BIA has "many times held that the violation of a regulatory . . . statute is not a [CIMT]." In re Abreu-Semino, 12 I. & N. Dec. 775, 776–77 (BIA 1968) (collecting cases).

The court departs from this general principle by noting there is no "bright line rule" excluding regulatory offenses from being considered CIMTs. Ante at 8. The court suggests that the "compelling societal purpose" behind the Minnesota statute

In his brief to the BIA, Bakor noted that the statute "requires certain persons to register with a state agency by providing information about their primary and secondary addresses, employment, and vehicles they own or operate." He then argued that a violation of the statute is not a CIMT because the failure to abide by its many registration requirements "is not an inherently despicable act." Because Bakor raised this issue with the agency, he has exhausted it. Cf. Agha v. Holder, 743 F.3d 609, 616 (8th Cir. 2014).

warrants a different result.[5] Id. But in reaching this conclusion, the court interprets the statute's purpose as protecting "vulnerable victims against recidivist sex offenders." Ante at 7. This is not how Minnesota courts have explained the statute's purpose. Moreover, this focus on purpose overlooks the categorical question we must decide: Whether "the least of the acts criminalized under the state statute" necessarily involves "inherently base, vile, or depraved" conduct. See Gomez-Gutierrez, 811 F.3d at 1058. By discounting the statute's text, the court fails to recognize that the "least of the acts criminalized" under Minnesota's registration statute constitutes technical and administrative conduct, not morally reprehensible conduct. See id.

Our court is not the first to consider whether a violation of a sex offender registration statute qualifies as a CIMT. Until today, every circuit that has addressed the issue has rejected the BIA's conclusion and decided that such an offense is not a CIMT. See Mohamed v. Holder, 769 F.3d 885, 889 (4th Cir. 2014); Totimeh v. Att'y Gen., 666 F.3d 109, 116 (3d Cir. 2012); Efagene, 642 F.3d at 926; Plasencia-Ayala v. Mukasey, 516 F.3d 738, 747 (9th Cir. 2008). These courts have reasoned that even a *knowing* failure to register "involves only administrative conduct" that does not itself "violate a recognized moral norm." Mohamed, 769 F.3d at 889; see also Efagene, 642 F.3d at 925 ("[A] knowing violation of a regulatory statute not involving an inherently despicable act is still insufficient to constitute a crime involving moral turpitude."); Plasencia-Ayala, 516 F.3d at 748 ("[I]t is the sexual offense that is reprehensible, not the failure to register.").

---

[5]Presumably, most regulatory schemes are enacted to further a public interest. But this does not necessarily render the regulated conduct morally reprehensible. See, e.g., Ali v. Mukasey, 521 F.3d 737, 740 (7th Cir. 2008) (rejecting BIA's decision that a violation of a gun registration statute is morally reprehensible, even though guns "are dangerous" and the regulations may "deter future wrongdoing"). Were moral turpitude to reach any breach of a duty that furthers the public interest, the requirement of "moral turpitude" would be unnecessary and a noncitizen could be removed if convicted of "two or more crimes" of almost any kind. See Efagene, 642 F.3d at 925; cf. 8 U.S.C. § 1227(a)(2)(A)(ii).

-14-

Moreover, the Third Circuit analyzed the same registration statute at issue here and concluded "the independent act of failing to register or update a registration as a predatory offender [in Minnesota] is not, as a category of crime, an inherently despicable act." Totimeh, 666 F.3d at 116. It is true that the Totimeh court separately cited the potential for a "forgetful" violation when it decided the Minnesota statute did not categorically involve a "culpable mental state" to qualify as a CIMT. See id. at 115–16; cf. Ante at 9. Nevertheless, the Third Circuit's other independent conclusion remained the same: the statute does not criminalize "a vile *act*" and thus fails the second essential element of a CIMT. Totimeh, 666 F.3d at 116 (emphasis added).

I would follow this consensus among the circuit courts because Minnesota's registration statute does not criminalize inherently base, vile, or depraved conduct. The BIA's decision to the contrary is not entitled to deference because it is an unreasonable interpretation of federal law. See Reyes-Morales, 435 F.3d at 944. And because the government has not met its burden to show that Bakor is removable for having two or more CIMT convictions, I would grant the petition for review. See 8 U.S.C. § 1227(a)(2)(A)(ii).

I respectfully dissent.

_____