**In re Jimmy Roberto JURADO-Delgado, Respondent**

File A38 846 972 - York

*Decided September 28, 2006*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An alien need not be charged and found inadmissible or removable on a ground specified in section 240A(d)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(d)(1)(B) (2000), in order for the alleged criminal conduct to terminate the alien's continuous residence in this country.

(2) Retail theft in violation of title18, section 3929(a)(1) of the Pennsylvania Consolidated Statutes is a crime involving moral turpitude.

(3) Unsworn falsification to authorities in violation of title18, section 4904(a) of the Pennsylvania Consolidated Statutes is a crime involving moral turpitude.

FOR RESPONDENT: George A. Terezakis, Esquire, Mineola, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Raphael A. Sanchéz, Assistant Chief Counsel

BEFORE: Board Panel: OSUNA, Acting Vice Chairman; COLE and PAULEY, Board Members.

PAULEY, Board Member:

In decision dated February 7, 2006, an Immigration Judge found the respondent removable as an alien convicted of two crimes involving moral turpitude, but granted his request for cancellation of removal under section 240A(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a) (2000). The Department of Homeland Security ("DHS") has appealed from that decision. The appeal will be sustained.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Ecuador who was admitted to the United States as a lawful permanent resident on September 15, 1985. The record reflects that he was convicted in 1991 of retail theft in violation of Pennsylvania law. It further reflects that he was also convicted in Pennsylvania in 1992 of unsworn falsification to authorities for an offense

that was committed on December 19, 1991.  In addition, the respondent was convicted in 1997 of two crimes involving moral turpitude that were the basis of the charge of removability in his Notice to Appear (Form I-862).  The respondent was not charged on the basis of either his 1991 or his 1992 conviction.

In proceedings before the Immigration Judge, the respondent conceded that he was removable, both on the initial charge and on a lodged charge that he falsely represented himself to be a United States citizen.  He applied for cancellation of removal under section 240A(a) of the Act, which the Immigration Judge granted.  The Immigration Judge concluded that neither the respondent's 1991 conviction for retail theft nor his 1992 conviction for unsworn falsification to authorities triggered the "stop-time" rule under section 240A(d)(1)(B) of the Act because they were not the basis of a charge and finding of removability.  The Immigration Judge relied on our decision in *Matter of Fortiz*, 21 I&N Dec. 1199 (BIA 1998), involving a waiver under former section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), which placed limitations on the availability of relief to any alien who "is deportable by reason of having committed" a specified offense.  We held that in order to be eligible for a waiver, the alien must have been "charged with, and found deportable on, the requisite ground of deportability." *Id.* at 1201 n.3

The DHS argues that *Matter of Fortiz, supra*, is not applicable in this case.  According to the DHS, the respondent's offenses "render" him inadmissible under section 212(a)(2)(A)(i) of the Act, 8 U.S.C. § 1182(a)(2)(A)(i) (2000), as they are both crimes involving moral turpitude.  Because these two crimes were committed within 7 years of his admission to the United States, the DHS contends that the respondent has failed to demonstrate the requisite period of continuous residence to establish his eligibility for cancellation of removal.  We agree and find that the Immigration Judge erred in concluding that the respondent is eligible for cancellation of removal.

## II.  "STOP-TIME" RULE

Section 240A(d)(1)(B) of the Act, commonly known as the "stop-time" rule, provides that the period of continuous residence for cancellation of removal is terminated when an alien commits a criminal offense referred to in section 212(a)(2) of the Act that "*renders the alien inadmissible* to the United States under section 212(a)(2) or removable from the United States under section 237(a)(2) or 237(a)(4), whichever is earliest."  (Emphasis added.)  We note that the word "render" is defined as "to cause to be or become." *Merriam-Webster's Collegiate Dictionary* 987 (10th ed. 2002).

In interpreting a statute we look first to the language of the statute. *Matter of Nolasco*, 22 I&N Dec. 632, 635-36 (BIA 1999).  "The paramount index of congressional intent is the plain meaning of the words used in the statute taken

as a whole." *Id*. at 636 (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987)). "Where the language is clear, we must give effect to the unambiguously expressed intent of Congress." *Id.* (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984)).

The language employed by Congress in the "stop-time" provision is clearly different from that in former section 212(c) of the Act, which we addressed in *Matter of Fortiz*, *supra*. That section provides that an alien who "is deportable" by reason of having committed a specified offense is not eligible for a waiver. In other sections of the Act Congress has employed the phrases "is inadmissible," "is deportable," or "is removable" to describe certain limitations that exist on relief or on judicial review. *See, e.g.*, section 240A(c)(4) of the Act; REAL ID Act of 2005, Div. B of Pub. L. No. 109-13, § 106(a)(1)(A)(ii), 119 Stat. 231, 310 (to be codified at section 242(a)(2)(C) of the Act, 8 U.S.C. § 1252(a)(2)(C)). We have long held that an alien must be charged and found deportable where Congress has used the phrase "is deportable." *See Matter of Fortiz*, *supra*; *Matter of Ching*, 12 I&N Dec. 710 (BIA 1968); *Matter of T-*, 5 I&N Dec. 459 (BIA 1953).

However, Congress used the word "renders" in section 240A(d)(1)(B) of the Act, and we must assume that it intended a different meaning by the use of that word. We find that the phrase "renders the alien inadmissible . . . or removable" in section 240A(d)(1)(B) of the Act requires only that an alien "be or become" inadmissible or removable, i.e., be potentially removable if so charged. Consequently, we conclude that an alien need not actually be charged and found inadmissible or removable on the applicable ground in order for the criminal conduct in question to terminate continuous residence in this country.

Second, and apart from the foregoing considerations based on principles of statutory construction, we also find it unlikely that Congress would have wished to make the application of the "stop-time" rule for accruing continuous residence dependent on whether the DHS opted to invoke an alien's commission of certain enumerated offenses as grounds for the alien's removal. We note that an alien need not have been convicted of an offense under section 212(a)(2) of the Act in order for the "stop-time" rule to apply. For example, the rule may be triggered by an alien's admission of acts constituting the essential elements of such an offense under section 212(a)(2)(A)(i). Thus, Congress did not require that the appropriate prosecuting authorities have previously charged an alien with a referenced offense in order to invoke the "stop-time" provision of section 240A(d)(1)(B) of the Act. Similarly, there is no reason to believe that Congress intended that an alien must have been charged with such an offense as a ground of inadmissibility or removability in order for the provision to stop the alien's accrual of continuous residence.

For the above-stated reasons, we find that our decision in *Matter of Fortiz*, *supra*, is not controlling in this case. *See also Salviejo-Fernandez v. Gonzales*, 455 F.3d 1063 (9th Cir. 2006) (rejecting a due process challenge to the use of an uncharged conviction to find an alien ineligible for relief).

The respondent also contends that the "stop-time" provisions should not apply in his case because his alleged crimes involving moral turpitude were committed prior to the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"). We have previously addressed and decided this retroactivity issue in *Matter of Perez*, 22 I&N Dec. 689 (BIA 1999), where we held that the "stop-time" provision applies, even if the commission of the offense preceded the enactment of the IIRIRA. We have also recently reconsidered the question in *Matter of Robles*, 24 I&N Dec. 22 (BIA 2006), where we found that the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001), does not require a different conclusion. *See also Fernandez-Vargas v. Gonzales*, 126 S. Ct. 2422 ( 2006) (finding that section 241(a)(5) of the Act, 8 U.S.C. § 1231(a)(5) (2000), which permits reinstatement of a removal order, may be applied to an alien who reentered before the effective date of the reinstatement provision); *Sotelo v. Gonzales*, 430 F.3d 968, 972 n.2 (9th Cir. 2005).

We point out that application of the "stop-time" rule in this case is triggered by the commission of a crime, rather than by a conviction resulting from a guilty plea. It is therefore distinguishable from *INS v. St. Cyr*, *supra*, which found that the amendments and repeal of former section 212(c) of the Act cannot be retroactively applied against aliens who pled guilty to their crimes. The Court in *St. Cyr* emphasized the quid pro quo nature of plea agreements and the benefits to each side during the transaction. *Id.* at 321-22. The respondent's situation does not involve the same considerations. Furthermore, the fact that the respondent has not specifically asserted that he would have acted differently but for the enactment of the "stop-time" rule undermines his argument that applying the rule to his case has an impermissible retroactive effect. *Cf. Arenas-Yepes v. Gonzales*, 421 F.3d 111, 117 (2d Cir. 2005) (holding that the "stop-time" rule at section 240A(d)(1)(A) of the Act, which cuts off time when a charging document is issued, had no impermissible retroactive effect on the petitioner). Under these circumstances, we find no merit to the respondent's argument in this regard. Consequently, if the respondent's offenses render him inadmissible under section 212(a)(2) of the Act, the "stop-time" rule applies and he is not eligible for cancellation of removal.

## III.  CRIMES INVOLVING MORAL TURPITUDE

We must now determine whether the respondent's offenses render him inadmissible under section 212(a)(2) of the Act.  Under section 212(a)(2)(A)(i)(I) of the Act, an alien is inadmissible if he or she has been convicted of a crime involving moral turpitude.  We have held that moral turpitude refers generally to conduct that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.  *See Matter of Tran*, 21 I&N Dec. 291, 292-93 (BIA 1996).

The respondent contends that the offense of retail theft pursuant to title 18, section 3929(a)(1) of the Pennsylvania Consolidated Statutes is not a crime involving moral turpitude because the statute does not require an intent to *permanently* deprive the owner of the use or benefit of the merchandise.[1]  We need not decide whether the premise of the respondent's argument is correct, i.e., that if the offense required only an intent to temporarily deprive the owner of the use or benefit of the property taken, the crime would not be one of moral turpitude.  The respondent has not cited any case law to support his argument that this offense is not a crime involving moral turpitude.

It is well settled that theft or larceny offenses involve moral turpitude.  *See, e.g.*, *Giammario v. Hurney*, 311 F.2d 285, 286 (3d Cir. 1962); *Matter of De La Nues*, 18 I&N Dec. 140, 145 (BIA 1981); *Matter of Westman*, 17 I&N Dec. 50, 51 (BIA 1979).  In determining whether there was an intention to permanently deprive the owner of his property, we have found it appropriate to consider the nature and circumstances surrounding a theft offense.  *See, e.g.*, *Matter of Grazley*, 14 I&N Dec. 330, 333 (BIA 1973); *Matter of S-*, 5 I&N Dec. 552, 555 (BIA 1953); *Matter of M-*, 2 I&N Dec. 686, 688 (C.O., BIA 1953); *Matter of F-*, 2 I&N Dec. 517, 520 (C.O., BIA 1946); *Matter of G-*, 2 I&N Dec. 235, 238 (BIA 1945).  We have also found that similar offenses involving theft of goods from a retail establishment are crimes involving moral turpitude.  *See, e.g.*, *Matter of Neely and Whylie*, 11 I&N Dec. 864 (BIA 1966); *Matter of P-*, 4 I&N Dec. 252 (Acting A.G., BIA 1951);  *Matter of W-*, 2 I&N Dec. 795 (C.O., BIA 1947).

A conviction for retail theft under Pennsylvania law requires proof that the person took merchandise offered for sale by a store without paying for it and with the intention of depriving the store owner of the goods.  Under these

---

[1]  The statute under which the respondent was convicted provides that a person is guilty of a retail theft if he "takes possession of . . . any merchandise . . . offered for sale by any store . . . with the intention of depriving the merchant of the possession, use, or benefit of such merchandise without paying the full retail value thereof."  18 Pa. Const. Stat. § 3929(a)(1) (1991).

circumstances, we find that the nature of the offense is such that it is reasonable to assume that the taking is with the intention of retaining the merchandise permanently. *Matter of Grazley*, *supra*, at 333; *see also Matter of V-Z-S-*, 22 I&N Dec. 1338, 1350 (BIA 2000) (noting that "the state courts have repeatedly concluded that this specific intent [to permanently deprive] can be *presumed* whenever one unlawfully takes, or attempts to take, the property of another"). Consequently, we conclude that the respondent's 1991 conviction for retail theft is for a crime involving moral turpitude.

The DHS concedes on appeal that the respondent's conviction for retail theft qualifies for the petty offense exception under section 212(a)(2)(A)(ii) of the Act. However, the petty offense exception is applicable if an alien "committed only *one* crime." *Id.* (emphasis added); *Matter of Garcia-Hernandez*, 23 I&N Dec. 590 (BIA 2003). Accordingly, we must examine the respondent's 1992 conviction for unsworn falsification to authorities to determine if it is also for a crime involving moral turpitude.[2]

The conviction records show that the respondent was convicted under title 18, section 4904(a) of the Pennsylvania Consolidated Statutes, which provides, in pertinent part, as follows:

> In general.–A person commits a misdemeanor of the second degree if, with intent to mislead a public servant in performing his official function, he:
>     (1) makes any written false statement which he does not believe to be true;
>     (2) submits or invites reliance on any writing which he knows to be forged, altered or otherwise lacking in authenticity . . . .

18 Pa. Cons. Stat. § 4904(a) (1992).

The respondent argues that the false statements involved in this crime cannot be considered turpitudinous because there is no requirement that they be "material." *Cf. Matter of G-,* 8 I&N Dec. 315 (BIA 1959) (finding that false writings containing false statements, made in violation of 18 U.S.C. § 1001, are not crimes involving moral turpitude where materiality was not an element of the crime); *Matter of S-*, 2 I&N Dec. 353, 359 (A.G., BIA 1945) (finding that a distinction should be drawn between false statements that are material and those that are not).

We find that the materiality of the false statements made is not controlling in this case. To obtain a conviction under the Pennsylvania statute, it must be proved that the actor has the "intent to mislead a public servant in performing

---

[2] We note that the respondent's two 1997 convictions for crimes involving moral turpitude do not preclude him from invoking the petty offense exception, because they would only act to render him inadmissible *after* he had accrued the necessary 7 years of continuous residence for cancellation of removal. *See Matter of Deanda-Romo*, 23 I&N Dec. 597 (BIA 2003).

his official function" through the use of a false written statement or other writing that he or she believes or knows is not true. 18 Pa. Cons. Stat. § 4904(a). Thus, the perpetrator must make misleading statements with an intention to disrupt the performance of a public servant's official duties. We have held that impairing and obstructing a function of a department of government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means is a crime involving moral turpitude. *See Matter of Flores,* 17 I&N Dec. 225, 229 (BIA 1980); *see also Rodriguez v. Gonzales,* 451 F.3d 60, 64 (2d Cir. 2006) (finding that a crime involving deceit and an intent to impair the efficiency and lawful functioning of government constitutes a crime involving moral turpitude); *Notash v. Gonzales*, 427 F.3d 693, 698-99 (9th Cir. 2005) (citing *Matter of Flores*, *supra*, with approval but finding it distinguishable on the facts); *cf. Matter of B-*, 7 I&N Dec. 342 (BIA 1956) (holding that willfully and knowingly making false statements in an application for a passport constitutes a crime of moral turpitude). We therefore conclude that the offense of making unsworn falsifications to authorities is a crime involving moral turpitude. We also reject the respondent's assertion that the failure of the statute to explicitly require that the false statement be made under oath undermines the otherwise turpitudinous nature of the offense, because it is the intent to mislead that is the controlling factor.

We find that the petty offense exception is inapplicable to the respondent's conviction for unsworn falsification to authorities because it is his second conviction for a crime involving moral turpitude. *See* section 212(a)(2)(A)(ii) of the Act. We therefore conclude that the respondent's conviction for unsworn falsification to authorities "renders" him inadmissible under section 212(a)(2)(A)(i)(I). The respondent was admitted into the United States in September 1985 and committed this offense on December 19, 1991. For the above reasons, we find that his crime terminated his continuous residence before he accrued the requisite 7 years of continuous residence for cancellation of removal and that he is consequently ineligible for that relief. *See* sections 240A(a)(2), (d)(1)(B) of the Act; *see also Matter of Perez*, *supra*.

## IV. DHS CONCESSION OF ELIGIBILITY

Lastly, we address the respondent's contention that the DHS previously conceded his eligibility for relief and therefore waived the issue. Initially the respondent argued that the DHS conceded that he was eligible for relief at the second master calendar hearing in February 2003, but he later claimed that according to his attorney's notes, the concession was made at the August 20,

2003, master calendar hearing.[3]  The DHS argues that it did not concede that the respondent was eligible for such relief and points out that he has not cited to any such a concession in the transcript of proceedings.  We agree.

We are unable to find a concession in the record, and the respondent has not cited to any page in the transcript where such a concession was made.[4]  Although the attorney for the DHS conceded at a hearing that the respondent appeared prima facie eligible for relief in that he was not charged with an aggravated felony, the attorney also pointed out that the respondent's convictions in 1991 and 1992 could constitute crimes involving moral turpitude and trigger the "stop-time" rule.  We therefore find no merit to this argument.

## V.  CONCLUSION

We conclude that the respondent's 1992 conviction is for a crime involving moral turpitude and that it "renders" him inadmissible under section 212(a)(2)(A)(i)(I) of the Act.  We further conclude that he is ineligible for cancellation of removal because his conviction, which was for an offense committed within 7 years of his admission to the United States, terminated his continuous residence in this country.  Accordingly, the DHS's appeal will be sustained and the respondent will be ordered removed.

**ORDER:** The appeal of the Department of Homeland Security is sustained.

**FURTHER ORDER:**  The Immigration Judge's order granting cancellation of removal is vacated.

**FURTHER ORDER:**  The respondent is ordered removed from the United States to Ecuador.

---

[3]  We note that the record indicates that no hearing was held in February 2003, because the respondent's February 3, 2003, motion for a continuance was granted and the hearing scheduled for February 19, 2003, was rescheduled for March 19, 2003.

[4]  We note that the transcript is out of order and that pages 21 to 34 reflect the first hearing in the respondent's case.