**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3625
_____

ROMAN ILDEFONSO-CANDELARIO,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF
AMERICA,
Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A208-443-783)
Immigration Judge: Hon. Walter A. Durling

_____

Argued June 12, 2017

Before:   JORDAN, KRAUSE, *Circuit Judges* and
STEARNS[*], *District Judge.*

(Filed: August 3, 2017)

_____

Daniel B. Conklin  [ARGUED]
The Shagin Law Group
120 South Street
The Inns of St. Jude
Harrisburg, PA   17101
        *Counsel for Petitioner*

Chad A. Readler
John S. Hogan
Brianne W. Cohen
Rebecca H. Phillips   [ARGUED]
Stefanie A. Svoren-Jay
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC   20044
        *Counsel for Respondent*

_____

OPINION OF THE COURT

_____

_____

[*] Honorable Richard G. Stearns, United States District
Court Judge for the District of Massachusetts, sitting by
designation.

STEARNS, *District Judge*.

Petitioner Roman Ildefonso-Candelario challenges a ruling of the Board of Immigration Appeals (BIA) upholding an Immigration Judge's determination that he is statutorily ineligible for cancellation of removal because of a prior conviction for a crime involving moral turpitude. For the following reasons, we will grant the petition and remand to the BIA for further proceedings.

## I. Background

Ildefonso-Candelario, a citizen of Mexico, entered the United States unlawfully, allegedly in 1996. In October of 2015, he pled guilty in Pennsylvania state court to a misdemeanor count of obstructing the administration of law or other governmental function. *See* 18 Pa. Cons. Stat. § 5101. The following March, Immigration and Customs Enforcement (ICE) took Ildefonso-Candelario into custody, charging him with being removable as a result of being an alien present without admission or parole. *See* 8 U.S.C. § 1182(a)(6)(A)(i). At his first hearing before the Immigration Judge, Ildefonso-Candelario conceded removability on the basis of his prior unlawful entry, but announced his intention to seek cancellation of removal. *See id.* § 1229b(b)(1)(A)-(D). In response, counsel for ICE suggested that Ildefonso-Candelario's prior conviction might qualify as a crime involving moral turpitude,[1] *see id.*

---

[1] The word "turpitude" is a 15th-century borrowing into the English language of the French "turpitude" or the Latin "turpitudo," meaning "base." *Turpitude*, Oxford English Dictionary (2d ed. 1989); *see, e.g.*, William

3

§ 1182(a)(2)(A)(i)(I), which would render him statutorily ineligible for cancellation of removal, *see id.* § 1229b(b)(1)(C).

Shortly thereafter, the Immigration Judge issued an initial ruling holding that section 5101 was "categorically" a crime involving moral turpitude. On the same day that the Immigration Judge issued his ruling, ICE added a charge of removability for committing a crime involving moral turpitude against Ildefonso-Candelario. *See id.* § 1227(a)(2)(i)(I). At his next hearing before the Immigration Judge, Ildefonso-Candelario moved for reconsideration of the Immigration Judge's ruling on section 5101. The Immigration Judge rejected Ildefonso-Candelario's arguments, again holding that section 5101 is categorically a morally turpitudinous crime. The Immigration Judge then ordered Ildefonso-Candelario removed to Mexico. Ildefonso-Candelario took an appeal to the BIA.

A single member of the BIA upheld the ruling "[f]or the reasons given by the Immigration Judge." App. at 4. This timely petition followed. While the petition was pending, the government moved to remand the matter to the BIA for further consideration. That motion was referred to the merits panel for our consideration.

## II. Discussion

---

Shakespeare, Antony and Cleopatra act 4, sc. 6 ("I am alone the villain of the earth, and feel I am so most. O Antony, thou mine of bounty, how wouldst thou have paid my better service, when my turpitude thou dost so crown with gold!").

When the BIA adopts an immigration judge's decision and reasoning, we review both rulings. *See Quao Lin Dong v. Att'y Gen.*, 638 F.3d 223, 227 (3d Cir. 2011). Whether an offense is a crime involving moral turpitude is a question of law subject to *de novo* review. *See Javier v. Att'y Gen.*, 826 F.3d 127, 130 (3d Cir. 2016). Typically, we accord so-called *Chevron* deference[2] to the BIA's reasonable determination that an offense is a turpitudinous crime. *Mehboob v. Att'y Gen.*, 549 F.3d 272, 275 (3d Cir. 2008). Here, however, the government concedes that the BIA's decision—a non-precedential disposition issued by a single member—is not entitled to *Chevron* deference. *See Mahn v. Att'y Gen.*, 767 F.3d 170, 173 (3d Cir. 2014). In any event, we do not defer to the BIA's interpretation of criminal statutes. *Mehboob*, 549 F.3d at 275.

To determine whether an offense involves moral turpitude, the BIA and this court apply a categorical approach.[3] *See, e.g.*, *Partyka v. Att'y Gen.*, 417 F.3d 408, 411 (3d Cir. 2005). Under the categorical approach, we examine the elements of the offense "to ascertain the least culpable conduct necessary to sustain [a] conviction under the statute." *Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 465-66 (3d Cir. 2009). A morally turpitudinous offense involves "conduct

---

[2] The doctrine is derived from *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

[3] The government does not suggest that section 5101 is a divisible offense, which would permit application of the modified categorical approach. *See Chavez-Alvarez v. Att'y Gen.*, 850 F.3d 583, 587-88 (3d Cir. 2017).

that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general." *Knapik v. Ashcroft*, 384 F.3d 84, 89 (3d Cir. 2004). "[T]he hallmark of moral turpitude is a reprehensible act committed with an appreciable level of consciousness or deliberation." *Partyka*, 417 F.3d at 414. If an offense can be committed without rising to this level of depravity, it is not categorically a crime involving moral turpitude. *See Mahn*, 767 F.3d at 174.

Section 5101, the Pennsylvania statute at issue, provides:

> A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

The Immigration Judge and the BIA analogized the statute to those considered in a line of BIA decisions addressing convictions for fraudulently and deliberately obstructing governmental functions. In *Matter of Flores*, 17 I. & N. Dec. 225 (BIA 1980), the BIA concluded that a conviction for falsifying immigration papers, 18 U.S.C. § 1426(b), qualified as a crime of moral turpitude. As the BIA observed, "crimes

in which fraud [is] an ingredient have always been regarded as involving moral turpitude." *Id.* at 228 (quoting *Jordan v. De George*, 341 U.S. 223, 232 (1951)). Because the offense at issue in *Matter of Flores* required that an offender "impair or obstruct an important function of a department of the government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means," *id.* at 229, and that the offender have knowledge of the counterfeit nature of the papers, the BIA held that "fraudulent conduct is implicit in the statute," *id.* at 230. The BIA subsequently relied on *Matter of Flores* in holding that a conviction under a Pennsylvania statute forbidding making written false statements to government officials "with intent to mislead a public servant in performing his official function," 18 Pa. Cons. Stat. § 4904(a), also involved moral turpitude. *Matter of Jurado-Delgado*, 24 I. & N. Dec. 29, 33-35 (BIA 2006). In such cases, "it is the intent to mislead that is the controlling factor." *Id.* at 35.

The problem with this analogy is that section 5101 encompasses non-fraudulent as well as fraudulent conduct, such as obstruction by "physical interference or obstacle." The Immigration Judge recognized the breadth of this monition, but concluded that the fact that a perpetrator "intentionally obstructs, impairs or perverts the administration of law or other governmental function" categorically incorporates morally turpitudinous conduct. The BIA adopted this reasoning, citing *Matter of Jurado-Delgado* for the proposition that "the 'controlling factor' is the intent to obstruct, impair, or pervert the lawful operations of government." App. at 5.

7

This interpretation is unsupportable. To begin, as the government concedes, *Matter of Jurado-Delgado* focused on the intent to *mislead*, not the mere intent to obstruct. 24 I. & N. Dec. at 35. Thus, the intent to impair or obstruct governmental functions, standing alone, is not morally turpitudinous under the BIA's decisions; the obstruction must occur "by deceit, graft, trickery, or dishonest means."[4] *Id.*

With that bedrock interpretative principle in mind, section 5101 plainly sweeps in conduct which does not involve fraudulent or deceptive efforts to hinder government action. Nothing in the text of the statute requires fraudulent or otherwise deceptive conduct as a necessary element of committing the offense. Applications of the statute in state cases confirm this reading. In *Commonwealth v. Mastrangelo*, for example, a defendant was convicted under section 5101 after shouting profanities and insults at a "meter maid" who ticketed his car, intimidating her from patrolling the street where defendant's business was located for approximately a week. 414 A.2d 54, 55-56 (Pa. 1980). The defendant's "course of disorderly conduct," the Pennsylvania Supreme Court held, "intentionally obstructed a meter maid from carrying out her lawful duties." *Id.* at 60. Similarly, in *Commonwealth v. Ripley*, the Superior Court concluded that section 5101 covered the actions of protestors who used "lock-boxes" to link themselves together to block an

---

[4] We note that this understanding of the BIA's precedents and the definition of moral turpitude accords with other Circuits that have addressed statutes involving obstruction, perjury, or false statements. *See Flores-Molina v. Sessions*, 850 F.3d 1150, 1171-72 (10th Cir. 2017) (collecting cases).

intersection and "physically obstruct lawful police efforts to ensure that public streets were free from obstruction." 833 A.2d 155, 161 (Pa. Super. 2003). The locks "interfere[d] with police efforts to disperse the protest" and were covered "in tar and chicken wire, for the sole purpose of slowing down police efforts to disassemble the human chain." *Id.*

The list of examples could go on. Further discussion would be largely supererogatory, however, because the government admits that section 5101 cannot categorically be a crime involving moral turpitude under *Matter of Flores* and *Matter of Jurado-Delgado*. Whatever may be said of the examples offered of conduct prosecuted under section 5101, neither involves fraud or the obstruction of governmental functions "by deceit, graft, trickery, or dishonest means."[5] *Matter of Flores*, 17 I. & N. Dec. at 229.

_____

[5] Ildefonso-Candelario devotes much of his brief to the proposition that minor assaults on law enforcement officers generally do not involve moral turpitude unless "there is deliberate conduct and an aggravating factor," such as the use of a deadly weapon, *Partyka*, 417 F.3d at 415, or an element of intentionally inflicted bodily injury, *see Matter of Danesh*, 19 I. & N. Dec. 669, 673 (BIA 1988). No such aggravating factor is required under section 5101. *See, e.g.*, *Commonwealth v. Love*, 896 A.2d 1276, 1283-85 (Pa. Super. 2006) (affirming a conviction under section 5101 for pushing a courtroom bailiff who was attempting to quiet defendant's wife). The government, however, does not attempt to defend the decisions below on this ground, acknowledging in its brief that any physical obstacle can suffice, and that the "physical obstruction need not be forceful or violent." Resp't Br. at 16 n.3.

Instead of defending the conclusion that section 5101 is categorically a crime involving moral turpitude, the government requests a remand without decision to permit the BIA to reconsider its position in the matter. *See Ren v. Gonzales*, 440 F.3d 446, 448 (7th Cir. 2006); *see generally SKF USA Inc. v. United States*, 254 F.3d 1022, 1027-30 (Fed. Cir. 2001) (outlining approaches to agency remand requests). The government points out that the BIA is generally entitled to *Chevron* deference for reasonable interpretations of ambiguous terms, *Mehboob*, 549 F.3d at 275, and theorizes that the BIA might conjure up an interpretation of the term "moral turpitude" enabling a conclusion that section 5101 categorically involves "conduct that is inherently base, vile, or depraved," *Knapik*, 384 F.3d at 89.

Yet the government has been unable, either in its brief or at oral argument, to articulate any understanding of the phrase "crime involving moral turpitude" that could plausibly encompass section 5101. This is not because of a failure of imagination. It instead reflects the simple fact that there is no conceivable way to describe the least culpable conduct covered by section 5101 — such as the illegal but nonviolent political protest described in *Ripley* — as inherently vile, or as "a reprehensible act committed with an appreciable level of consciousness or deliberation." *Partyka*, 417 F.3d at 414. Moreover, no "emerging case law," *Ren*, 440 F.3d at 448, involving either section 5101 or the definition of moral turpitude in other contexts calls for giving the BIA a second bite at the apple. *See Jean-Louis*, 582 F.3d at 469 (declining to remand where the relevant legal materials, including BIA decisions, "lead[] inexorably to the conclusion" that an offense is not morally turpitudinous).

10

Under the circumstances, we see no reason for remanding without correcting the legal error apparent on the face of the petition. *See Mayorga v. Att'y Gen.*, 757 F.3d 126, 134 (3d Cir. 2014); *cf. City of Arlington v. FCC*, 133 S. Ct. 1863, 1874 (2013) ("[W]here Congress has established an ambiguous line, the agency can go no further than the ambiguity will fairly allow."). We thus deny the government's request for a voluntary remand and hold that 18 Pa. Cons. Stat. § 5101 is not categorically a crime involving moral turpitude.

### III. Conclusion

For the foregoing reasons, we will grant Ildefonso-Candelario's petition and remand to the BIA for further proceedings consistent with this opinion.

11