**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-2444

JOSE LUIS RAMIREZ,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: December 5, 2017                    Decided: April 17, 2018

Amended: June 7, 2018

Before GREGORY, Chief Judge, MOTZ and TRAXLER, Circuit Judges.

Petition for review granted, order of removal vacated, and remanded with directions by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Motz and Judge Traxler joined.

**ARGUED:** Benjamin Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner. Vanessa M. Otero, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Chad A. Readler, Acting Assistant Attorney General, Anthony P. Nicastro, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

GREGORY, Chief Judge:

Jose Ramirez seeks review of the decision of the Board of Immigration Appeals (BIA) finding him ineligible for special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act (NACARA). Specifically, the question is whether Ramirez's convictions for obstruction of justice pursuant to Va. Code Ann. § 18.2-460(A) qualify as crimes involving moral turpitude (CIMTs). We hold that obstruction of justice under § 18.2-460(A) is not a CIMT because it may be committed without fraud, deception, or any other aggravating element that shocks the public conscience. We therefore grant Ramirez's petition for review, vacate the BIA's order of removal, and remand with directions for the Government to facilitate Ramirez's return to the United States to participate in further proceedings.

I.

Jose Ramirez, a citizen of El Salvador, first entered the United States in 1996 when he was seventeen years old. Nearly twenty years later, Ramirez was placed in removal proceedings and charged with being present in the United States without being admitted or paroled under 8 U.S.C. § 1182(a)(6)(A)(i). At his hearing, Ramirez conceded that he had entered the country unlawfully. A.R. 69.

Ramirez then applied for special rule cancellation of removal under section 203 of NACARA, Pub. L. No. 105-100, 111 Stat. 2160, 2196–2199 (1997). Section 203 allows certain nationals from El Salvador and other designated countries to apply for suspension of deportation or special rule cancellation of removal and adjust their status to permanent

2

residency. *See id.* To qualify under NACARA, an alien ordinarily must establish at least seven years of continuous presence in the United States, among other eligibility criteria. 8 C.F.R. § 1240.66(b)(2)–(4). However, an applicant who is inadmissible or removable for having committed a CIMT must establish at least *ten* years of continuous presence after becoming inadmissible or removable. *See Matter of Castro-Lopez*, 26 I & N Dec. 693, 693 (BIA 2015); 8 C.F.R. §§ 1240.66(b) and (c).

The Department of Homeland Security (DHS) moved to pretermit Ramirez's application for relief under NACARA, arguing that his prior convictions triggered the ten-year requirement. In 2012, Ramirez was convicted of one count of petit larceny under Va. Code Ann. § 18.2-96 and two counts of obstruction of justice under § 18.2-460(A). A.R. 135, 138, 144. DHS argued that those convictions qualified as CIMTs, thereby subjecting Ramirez to the ten-year physical presence requirement, which he could not meet.[1] The decision turned on whether the obstruction offenses were CIMTs because petit larceny, which Ramirez conceded was a CIMT, was not independently sufficient to trigger inadmissibility and the heightened ten-year requirement.[2]

---

[1] When an alien incurs a new ground for inadmissibility or removability, the clock for establishing a period of continuous presence restarts for purposes of NACARA eligibility. *See Matter of Castro-Lopez*, 26 I & N Dec. at 693. Here, if Ramirez's convictions were in fact CIMTs, then his clock would have restarted in 2012, and he would not have accrued ten years by the time of his petition.

[2] The parties agreed that petit larceny otherwise fell within the so-called "petty offense" exception, which exempts certain minor CIMTs from being considered as the ground for inadmissibility. A.R. 48. The exception applies only if three criteria are satisfied: the alien has been convicted of no more than one CIMT, the offense is punishable with a term of imprisonment not exceeding one year, and the alien was sentenced to a term

3

The Immigration Judge (IJ) concluded that obstruction of justice under Va. Code Ann. § 18.2-460(A) was a CIMT. In a brief oral decision, the IJ reasoned that "the statute requires an act indicating an intention to prevent an officer from performing his or her duties and that such impairing or obstructing an officer is morally turpitudinous." A.R. 64. The IJ then found that Ramirez was removable and did not qualify for relief under section 203 of NACARA. A.R. 65.

In a brief single-member decision, the BIA agreed that obstruction under § 18.2-460(A) was a CIMT and affirmed. A.R. 3–4. In response, Ramirez filed a motion for a stay of removal with this Court. This Court denied the motion, and Ramirez was removed to El Salvador.

Ramirez filed a timely petition for review with this Court. In his petition, Ramirez argues that the BIA erred in finding that obstruction of justice under Va. Code Ann. § 18.2-460(A) was a CIMT. Ramirez also asks this Court to order the Government to facilitate his return to the United States. In response, the Government argues that this Court lacks jurisdiction because Ramirez has failed to exhaust his administrative remedies, that the BIA did not err, and that ordering Ramirez's return is unnecessary.

II.

Before assessing the merits of Ramirez's claims, "[w]e first consider whether we have jurisdiction" over his petition for review. *Etienne v. Lynch*, 813 F.3d 135, 138 (4th

---

of imprisonment not exceeding six months. 8 U.S.C. § 1182(a)(2)(A)(ii)(II). Because a conviction for such a petty offense would not constitute a ground for inadmissibility, it therefore would not trigger the heightened standard under NACARA.

4

Cir. 2015). When Congress passed the REAL ID Act in 2005, it limited our jurisdiction over certain final orders of removal. *Kporlor v. Holder*, 597 F.3d 222, 225–26 (4th Cir. 2010) (citing 8 U.S.C. § 1252(a)(2)). However, we retain jurisdiction "to review constitutional claims or questions of law," provided that the petitioner has complied with the administrative exhaustion requirement. 8 U.S.C. § 1252(a)(2)(D); *Etienne*, 813 F.3d at 138. As the Government rightly concedes, determining whether a crime involves moral turpitude is a question of law. Gov. Br. at 3; *see Mbea v. Gonzales*, 482 F.3d 276, 277–78 & n.1 (4th Cir. 2007). But, the Government argues, that this Court lacks jurisdiction because Ramirez failed to exhaust his administrative remedies. For the reasons below, we conclude that Ramirez has complied with the exhaustion requirement and that this Court has jurisdiction over his petition for review.

"A court may review a final order of removal against an alien only if 'the alien has exhausted all administrative remedies available to the alien as of right.'" *Etienne*, 813 F.3d at 138 (quoting 8 U.S.C. § 1252(d)(1)). "When an alien has an opportunity to raise a claim in administrative proceedings but does not do so, he fails to exhaust his administrative remedies as to that claim." *Id.*

However, § 1252 only prohibits "the consideration of bases for relief that were not raised below, and of general issues that were not raised below, but not of specific, subsidiary legal arguments, or arguments by extension, that were not made below." *Gill v. INS*, 420 F.3d 82, 86 (2d Cir. 2005); *see also Garcia v. Lynch*, 786 F.3d 789, 792–93 (9th Cir. 2015) (holding that petitioner satisfied exhaustion requirement by raising argument during administrative proceedings, albeit in limited way); *Chuen Piu Kwong v. Holder*,

5

671 F.3d 872, 877 (9th Cir. 2011) (holding that general challenge to sufficiency of evidence to support finding by IJ as to aggravated felony conviction was sufficient to meet exhaustion requirement, even though petitioner raised issue below in "slightly different manner"), *cert. denied* 133 S. Ct. 2885 (2013); *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 338 (3d Cir. 2011) (finding that exhaustion requirement is met if petitioner made "some effort, however insufficient, to place the BIA on notice of a straightforward issue being raised on appeal" (citation omitted)); *Dale v. Holder*, 610 F.3d 294, 300–01 (5th Cir. 2010) ("[A]lthough the argument [petitioner] presented to the BIA is not identical to that which he raises in his petition for review, the arguments are sufficiently related to establish that [he] presented his ground for relief to the administrative agency in the first instance." (internal quotation marks omitted)).

The Government does not dispute that Ramirez argued below that obstruction of justice under Virginia law is not a CIMT.  A.R. 31.  Instead, the Government argues that administrative exhaustion bars Ramirez's appellate counsel from making more specific and nuanced points to demonstrate how and why obstruction is not a CIMT.  In particular, the Government takes issue with appellate counsel citing certain cases for the first time on appeal in order to elaborate on the breadth of the Virginia statute.  The Government has not provided any basis for applying the exhaustion requirement at this level of granularity.[3]

---

[3] The cases cited by the Government are clearly distinguishable.  *See Gonzales v. Thomas*, 547 U.S. 183, 184–87 (2006) (holding that court of appeal should have remanded to allow agency to apply correct asylum standard); *INS v. Ventura*, 537 U.S. 12, 17 (2002) (holding that court of appeal should have remanded to allow agency to consider issue that it previously declined to address); *Tiscareno-Garcia v. Holder*, 780 F.3d 205, 210 (4th Cir.

Indeed, such an approach would strip appellate counsel's ability to bolster existing arguments—and limit the universe of available case law and precedent to those already cited below. *Cf. Massis v. Mukasey*, 549 F.3d 631, 638 (4th Cir. 2008) (finding lack of exhaustion because petitioner completely failed to contest below whether reckless endangerment was crime of violence). No decision of this Court has so undermined the basics of appellate advocacy and review, and we, like our sister circuits, decline the Government's invitation to do so.

We therefore conclude that Ramirez satisfied the exhaustion requirement under § 1252(d)(1) when he argued below that obstruction of justice is not a CIMT. Accordingly, we have jurisdiction over this question of law.

## III.

We now turn to the merits of Ramirez's argument. The dispositive issue is whether obstruction of justice under Va. Code Ann. § 18.2-460(A) is categorically a crime involving moral turpitude under 8 U.S.C. § 1182(a)(2)(A)(i)(I). The obstruction statute provides,

> If any person . . . knowingly obstructs . . . any law-enforcement officer . . . in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such . . . law-enforcement officer . . . shall be guilty of a Class 1 misdemeanor.

---

2015) (finding failure to exhaust because petitioner did not claim below that prior offense fell outside relevant time period); *Kporlor*, 597 F.3d at 226–27 (finding failure to exhaust because petitioner did not appeal CAT claim to BIA); *Kurfees v. INS*, 275 F.3d 332, 336 (4th Cir. 2001) (finding failure to exhaust because petitioner neglected to appeal to BIA). Neither *Gonzales* nor *Ventura* concerned a failure to exhaust, and the remaining cases all involved entirely new bases or theories for relief that were not presented to the BIA.

7

Va. Code Ann. § 18.2-460(A).

In a two-page, non-precedential, one-member decision, the BIA concluded that obstruction under § 18.2-460(A) is a CIMT. In reaching that conclusion, the BIA invoked its precedential decision in *Matter of Jurado-Delgado*, 24 I. & N. Dec. 29 (BIA 2006).

For the reasons below, we conclude that *Matter of Jurado-Delgado* is inapposite and that the BIA decision in this case is not entitled to any deference. We then address *de novo* whether obstruction under Virginia law is a CIMT and ultimately conclude that it is not.

A.

We first consider what deference, if any, this Court owes to the BIA's legal conclusions in this case. Under the well-known *Chevron* doctrine, an agency's interpretation of the statute(s) that it administers is entitled to deferential review if the agency exercises delegated authority to "make rules carrying the force of law." *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). Once eligible for *Chevron* review, the agency's interpretation is controlling to the extent that "Congress has not directly addressed the precise question at issue" and "the agency's answer is based on a permissible construction of the statute." 467 U.S. at 842–43; *Sijapati v. Boente*, 848 F.3d 210, 215 (4th Cir. 2017). Absent *Chevron* deference, agency decisions are given a level of respect commensurate with their persuasiveness. *Mead*, 533 U.S. at 221. Here, the BIA decision on review is not eligible for *Chevron* deference to the extent that it interprets the Virginia obstruction statute, which it does not administer, and to the extent that it lacks the force of

8

law as a non-precedential decision and is not controlled by BIA precedent. We further conclude that the BIA's abbreviated analysis is unpersuasive and does not merit any deference.

The BIA's legal conclusion here—that a conviction under state law is categorically a CIMT—involves two interpretative questions, one about the Immigration and Nationality Act (INA) and one about a state criminal statute. *See Prudencio v. Holder*, 669 F.3d 472, 482–84 (4th Cir. 2012) (citing *Taylor v. United States*, 495 U.S. 575, 600–01 (1990)). We may apply *Chevron* to BIA decisions interpreting the INA but not the agency's interpretations of state criminal law and other statutes that lie beyond the BIA's authority and expertise.[4] *Soliman v. Gonzales*, 419 F.3d 276, 281 (4th Cir. 2005).

The first interpretative question is what the term "moral turpitude" means in the INA. Because the term "moral turpitude" is ambiguous, we would defer, under *Chevron*, to the agency's reasonable construction of the term and definition of the types of conduct it encompasses. *Mohamed v. Holder*, 769 F.3d 885, 889 (4th Cir. 2014); *Prudencio*, 669 F.3d at 484.

The second interpretative question is whether the state statute of conviction necessarily involved the type of conduct defined to be morally turpitudinous. On this question of state law, we do not owe any deference to the BIA. *See Soliman*, 419 F.3d at 281 ("[W]e need not accord deference to the BIA's ultimate finding that [petitioner's]

---

[4] The Attorney General has delegated his discretion and authority in interpreting the INA to the BIA, which "shall exercise [its] independent judgment and discretion in considering and determining the cases coming before the board." 8 C.F.R. § 1003.1(d)(1)(ii).

particular offense was an aggravated felony, which involves . . . an interpretation of Virginia criminal law."). In other words, "we do not defer to the BIA's application of [INA] definitions to particular state statutes." *Amos v. Lynch*, 790 F.3d 512, 518 n.5 (4th Cir. 2015).

However, regardless of the nature of the interpretative question, non-precedential opinions by the BIA are categorically ineligible for *Chevron* review because they do not carry the force of law. *Martinez v. Holder*, 740 F.3d 902, 909–10 (4th Cir. 2014); *see also Amos*, 790 F.3d at 519. To be precedential, opinions of the BIA must be issued, at minimum, by a three-member panel and must be designated as precedential by a majority of the permanent members of the Board. 8 C.F.R. § 1003.1(g). In this case, the BIA's one-member decision does not carry the force of law, and we do not review its legal conclusions, whether as to the INA or as to state law, under the *Chevron* two-step framework. Accordingly, the BIA's determination here that any intentional act "to obstruct, impair, or pervert the lawful operations of government" inherently involves moral turpitude under the INA is not eligible for *Chevron* deference. A.R. 4.

But, because the BIA determination here relied on *Matter of Jurado-Delgado*, 24 I. & N. Dec. at 35, which is precedential, we must determine whether the latter is apposite and entitled to *Chevron* deference. *Sijapati*, 848 F.3d at 215; *Larios-Reyes v. Lynch*, 843 F.3d 146, 155 (4th Cir. 2016); *Amos*, 790 F.3d at 519. In *Matter of Jurado-Delgado*, deceit was the critical aggravator that rendered an obstruction offense a CIMT. In that case, the question was whether a conviction for making false statements to a government official "with intent to mislead a public servant in performing his official function" involved moral

10

turpitude. 24 I. & N. Dec. at 33–35. Indeed, the BIA answered in the affirmative, reasoning that the "intent to mislead [] is the *controlling factor*." *Id.* at 35 (emphasis added). In turn, the BIA in *Matter of Jurado-Delgado* relied on its prior precedential decision in *Matter of Flores*, where the BIA concluded that a conviction for falsifying immigration papers under 18 U.S.C. § 1426(b) qualified as a CIMT. 17 I. & N. Dec. 225, 225 (BIA 1980). There, the BIA found that "crimes in which fraud [is] an ingredient have always been regarded as involving moral turpitude." *Id.* at 228. Thus, the *Matter of Jurado-Delgado* line of precedent merely determined that conduct involving "deceit, graft, trickery, or dishonest means" is morally turpitudinous.[5] *See* 24 I. & N. Dec. at 35.

In relation to those cases, the BIA's one-member decision in this case attempts to significantly expand the definition of a CIMT by removing deceit, a critical indicator of moral turpitude, from the equation. Since this non-precedential decision departs from, rather than relies on, precedential BIA decisions, it is not eligible for *Chevron* review.

In the absence of *Chevron* deference, the weight given to a BIA decision "hinges on 'the thoroughness evident in [the BIA's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" *Zavaleta-Policiano v. Sessions*, 873 F.3d 241, 246 n.2 (4th Cir. 2017)

_____

[5] Our sister circuits have similarly construed *Matter of Jurado-Delgado* and related decisions addressing obstruction, perjury, and false statements. *See Idelfonso-Candelario v. Att'y Gen. of the U.S.,* 866 F.3d 102, 105–07 (3d Cir. 2017) ("*Matter of Jurado-Delgado* focused on the intent to mislead, not the mere intent to obstruct. Thus, the intent to impair or obstruct governmental functions, standing alone, is not morally turpitudinous under the BIA's decisions; the obstruction must occur 'by deceit, graft, trickery, or dishonest means.'"); *Flores-Molina v. Sessions*, 850 F.3d 1150, 1171–72 (10th Cir. 2017) (collecting cases).

11

(quoting *Martinez*, 740 F.3d at 909–10); *see Mead*, 533 U.S. at 221. Here, the BIA provides only three sentences of analysis that are conclusory in nature and disregards the agency's prior emphasis on fraud or deceit as a critical determinant without identifying an alternative aggravator. Consequently, the BIA decision is also undeserving of so-called *Skidmore* respect because it lacks the power to persuade. *See Mead*, 533 U.S. at 221.

In sum, under *Chevron*, BIA decisions defining morally turpitudinous conduct are controlling if they are precedential and reasonable. However, the BIA's interpretations of laws that it does not administer, such as the Virginia obstruction of justice statute, and its non-precedential decisions are only given weight to the extent that this Court finds the reasoning persuasive. Here, because we do not find persuasive the BIA's abbreviated and non-precedential opinion, we do not accord it any deference.

B.

We now determine *de novo* whether Ramirez's conviction under Va. Code Ann. § 18.2-460(A) fits within the INA's definition of a CIMT. *Uribe v. Sessions*, 855 F.3d 622, 625 (4th Cir. 2017). To answer this question, we apply the categorical approach, which examines only the statutory elements of the prior offense, not the particular conduct underlying the conviction.[6] *See Descamps v. United States*, 570 U.S. 254, 261 (2013);

---

[6] In a "narrow range of cases," a criminal statute may consist of "multiple, alternative versions" of a crime, only a subset of which qualify as a CIMT. *See Descamps,* 570 U.S. at 262–63. For these so-called "divisible" statutes, we look to the record of conviction to determine whether the petitioner was necessarily convicted of a version of the crime that qualifies as a CIMT. Even under this "modified categorical approach," we are still focused on the elements of conviction, not the underlying facts of what the petitioner did. *Id.* In this case, neither party argues that § 18.2-460(A) is divisible into a

12

*Moncrieffe v. Holder*, 133 S.Ct. 1678, 1684 (2013). In this case, obstruction of justice under § 18.2-460(A) qualifies as a CIMT if even the minimum conduct needed to violate the state statute would involve moral turpitude. *See Larios-Reyes*, 843 F.3d at 152 (noting that minimum conduct must have "realistic probability, not a theoretical possibility" of being prosecuted). We first examine how moral turpitude has been defined for purposes of the INA and then consider whether obstruction under § 18.2-460(A) prohibits any conduct that is not morally turpitudinous.

The BIA defines the term "moral turpitude" as behavior "that shocks the public conscience as being inherently base, vile, or depraved."[7] *Mohamed*, 769 F.3d at 888 (citing *Matter of Tobar-Lobo*, 24 I. & N. Dec. 143, 144 (BIA 2007); *Matter of Danesh*, 19 I. & N. Dec. 669, 670 (BIA 1988)). A CIMT must involve both a morally culpable mental state and morally reprehensible conduct. *Sotnikau v. Lynch*, 846 F.3d 731, 736 (4th Cir. 2017) (citing *In re Ortega-Lopez*, 26 I. & N. Dec. 99, 100 (BIA 2013)). To meet the *mens rea* requirement, the crime must have, as an element, an intent to achieve an immoral result or willful disregard of an inherent and substantial risk that an immoral act will occur. *See id.* (citing *In re Perez-Contretas*, 20 I. & N. Dec. 615, 619 (BIA 1992)). To meet the *actus reus* requirement, the crime "must involve conduct that not only violates a statute but also

---

CIMT version and a non-CIMT version, nor do we discern such a division. Accordingly, we need not and do not consider the modified categorical approach.

[7] As previously discussed, we afford *Chevron* deference to the BIA's reasonable interpretation of the term "crime involving moral turpitude," used in the INA. *See Mohamed*, 769 F.3d at 888. Ramirez does not challenge the applicability of these established BIA definitions.

13

independently violates a moral norm." *Id.*; *see Mohamed*, 769 F.3d at 888 ("[T]he phrase 'involving moral turpitude' . . . refers to more than simply the wrong inherent in violating the statute. Otherwise the requirement . . . would be superfluous."). Therefore, for obstruction under § 18.2-460(A) to categorically qualify as a CIMT, it must *exclusively* criminalize knowing or intentional acts that violate a moral norm. *See Sotnikau*, 846 F.3d at 735 ("We look at the elements of the crime at issue and determine whether those elements solely encompass behavior that involves moral turpitude.").

With that definition of moral turpitude in mind, we turn to the elements of § 18.2-460(A). *See Uribe*, 855 F.3d at 626. Under Virginia law, to constitute obstruction, "there must be acts clearly indicating an intention on the part of the accused to prevent [an] officer from performing his duty." *Ruckman v. Commonwealth*, 505 S.E.2d 388, 389 (Va. Ct. App. 1998) (citing *Jones v. Commonwealth*, 126 S.E. 74, 77 (Va. 1925)). Because obstruction in Virginia requires a showing of intent, the offense may have the *mens rea* necessary to qualify as a CIMT if the intended obstruction is an immoral act or result.

However, § 18.2-460(A) does not require morally reprehensible conduct. As the BIA's rationale in *Matter of Jurado-Delgado* suggests, an act of obstruction, standing alone, does not categorically involve moral turpitude. *See* 24 I. & N. Dec. at 33–35. In other words, there must be some other aggravating element that pushes a mere violation of the law into the territory of moral depravity. Unlike the statute the BIA considered in *Matter of Jurado-Delgado*, § 18.2-460(A) does not require the use of fraud or deceit. Indeed, in Virginia, obstruction via deception is punished under a different subsection. *See* Va. Code Ann. § 18.2-460(D). Nor does a conviction under § 18.2-460(A) require *any* use

14

of threats or force, let alone force or violence that rises to the level of moral depravity. *See* Va. Code Ann. §§ 18.2-460(B), (C); *Thorne v. Commonwealth*, 784 S.E.2d 304, 305 (Va. Ct. App. 2016). Thus, nothing in the text of § 18.2-460(A) appears to require the commission of an "inherently base, vile, or depraved" act. *See Mohamed*, 769 F.3d at 888.

Virginia case law makes clear that § 18.2-460(A) prohibits a wide-range of actions (and inactions) that do not categorically involve moral depravity. According to the Court of Appeals of Virginia, one need not take any action at all to be convicted of obstruction. *Thorne*, 784 S.E.2d at 308 ("[O]bstruction may be either active or passive."). In *Thorne*, the state court upheld a conviction of a woman who, for only nine minutes, refused to lower her car windows for a tint inspection because she felt that her rights were being violated by the officer. *Id.* at 309. Similarly, other cases have upheld convictions for conduct that, even if unwise, does not "shock[] the public conscience." *See Mohamed*, 769 F.3d at 888. In *Molinet v. Commonwealth*, the defendant cursed at and refused to back away from an officer. 779 S.E.2d 231, 232–33, 235 (Va. Ct. App. 2015). In *Mason v. Commonwealth*, the defendant did no more than loudly demand that officers leave his yard. No. 1189-98-2, 1999 WL 1133677, at *1 (Va. Ct. App. Aug. 3, 1999). These cases demonstrate more than a "realistic probability" that even relatively minor misconduct may be prosecuted under § 18.2-460(A). *See Larios-Reyes*, 843 F.3d at 152.

The Government has not shown how such misconduct categorically violates a moral norm. Instead, the Government merely reiterates the BIA's non-precedential and unsupported position that any "intent to obstruct, impair, or pervert the lawful operations

15

of government" necessarily involves morally turpitude.[8]  Resp. Br. at 29–30.  However, morality does not forbid civil disobedience.  *See United States v. Moylan*, 417 F.2d 1002, 1008 (4th Cir. 1969) ("[A] morally motivated act contrary to law may be ethically justified.").  It simply cannot be that verbal protests against law enforcement and refusals to comply are categorically immoral.  To the contrary, our nation has repeatedly witnessed how civil disobedience may advance the causes of morality and justice, even if such opposition runs afoul of statutory proscriptions.  *See id.* ("Faced with the stark reality of injustice, [persons] of sensitive conscience and great intellect have sometimes found only one morally justified path, and that path led them inevitably into conflict with established authority and its laws.").  The Government's view of obstruction erroneously equates might with right.

Because § 18.2-460(A) prohibits conduct that does not necessarily involve moral turpitude, it sweeps more broadly than the INA's definition of a CIMT, and Ramirez's convictions thereunder do not qualify as CIMTs.[9]  We therefore hold that obstruction under

---

[8] The Government cites no relevant authority for this proposition.  The Government claims that two cases from our sister circuits have held that obstruction is a CIMT but neglects to mention that both cases concerned statutes that have deception as an element. *See Rodriguez v. Gonzales*, 451 F.3d 60, 64–65 (2d Cir. 2006); *Padilla v. Gonzales*, 397 F.3d 1016, 1020–21 (7th Cir. 2005).

[9] As noted previously, this ends our inquiry because this case does not fall into the "narrow range of cases" in which we apply the modified categorical approach to examine the record of conviction.  *See Descamps*, 570 U.S. at 262–63.  Section 18.2-460(A) does not reference fraud, deception, or any other aggravator needed to qualify as a CIMT.  By definition, the provision does not (and cannot) have a divisible version of obstruction that might otherwise qualify as a CIMT.  Accordingly, the modified categorical approach has no utility here, and we do not consider whether the statute is otherwise divisible or whether the record of conviction reveals a CIMT.

Va. Code Ann. § 18.2-460(A) is not a CIMT for purposes of NACARA and 8 U.S.C. § 1182(a)(2)(A)(i)(I).

*     *     *

Because obstruction of justice under § 18.2-460(A) is not a CIMT, Ramirez's only CIMT conviction is his conviction for petit larceny. The parties agree that petty larceny qualifies for the "petty offense" exception under 8 U.S.C. § 1182(a)(2)(A)(ii)(II). Accordingly, Ramirez is not inadmissible on the grounds of a CIMT conviction and does not have to meet the heightened ten-year requirement to be eligible for NACARA. We therefore remand the case to the BIA to determine if Ramirez otherwise qualifies for relief under section 203 of NACARA, notwithstanding his removal (effectuated due to a legal error) from this country.

IV.

Ramirez also petitions this Court to order the Government to facilitate his return to the United States for the completion of his removal proceedings, including his application for relief under NACARA. Under an Immigration and Customs Enforcement (ICE) policy directive, "[a]bsent extraordinary circumstances, if an alien who prevails before the U.S. Supreme Court or a U.S. court of appeals was removed while his or her [petition for review] was pending, ICE will facilitate the alien's return to the United States if either the court's decision restores the alien to lawful permanent resident (LPR) status, or the alien's presence is necessary for continued administrative removal proceedings." U.S. Immigration and Customs Enforcement Policy Directive Number 11061.1, *Facilitating the*

17

*Return to the United States of Certain Lawfully Removed Aliens* (Feb. 24, 2012) (saved as ECF opinion attachment 1). Among other circumstances, an alien's presence is necessary when a court orders his or her presence.[10] Contrary to the Government's position, we conclude in this case that Ramirez's presence is necessary to effectuate judicial review and to restore him to the status he had before his removal, such that he may apply for relief under NACARA under the correct standard. We therefore direct the Government to facilitate Ramirez's return, pursuant to Directive 11061.1, for that limited purpose.[11]

We note that our order does not confer on Ramirez any immigration benefits beyond enabling him to apply for special rule cancellation of removal and, if so granted by the IJ or the BIA, eventual adjustment of status, notwithstanding his removal, which was premised on a mistaken conclusion of law. In other words, the agency retains the authority to lawfully deny him relief on other grounds. As our sister circuits have done in similar circumstances, we grant this relief because judicial review would otherwise be frustrated if Ramirez cannot be restored to the status he had before his removal. *See Orabi v. Att'y*

---

[10] *See* U.S. Immigration and Customs Enforcement, *Frequently Asked Questions (FAQs) on Facilitating Return for Lawfully Removed Aliens* (saved as ECF opinion attachment 2) ("ICE will facilitate your return to the United States if your presence is necessary for continued adjudication of your case. This may be because the court of appeals specifically ordered your presence, or because the nature of the court's order requires you to return for further testimony.").

[11] Under the Directive, "facilitating an alien's return" entails enabling an alien to "engage in activities which allow a lawfully removed alien to travel to the United States (such as by issuing a Boarding Letter to permit commercial air travel) and, if warranted, parole the alien into the United States upon his or her arrival at a U.S. port of entry." U.S. Immigration and Customs Enforcement Policy Directive Number 11061.1. This "does not necessarily include funding the alien's travel via commercial carrier to the United States or making flight arrangements for the alien." *Id.*

*Gen. of U.S.*, 738 F.3d 535, 543 (3d Cir. 2014) (vacating the BIA's order and directing the Government "to return [petitioner] to the United States"); *Samirah v. Holder*, 627 F.3d 652, 665 (7th Cir. 2010) ("We remand . . . for the issuance of a mandamus commanding the Attorney General to take whatever steps are necessary to enable the plaintiff to reenter the United States for the limited purpose of reacquiring the status . . . that he enjoyed when he left the United States.").

## V.

The BIA erred as a matter of law when it concluded that obstruction of justice under Va. Code Ann. § 18.2-460(A) is a crime involving moral turpitude under the INA. We therefore grant Ramirez's petition for review, vacate the order of removal, and remand with directions for the Government to facilitate Ramirez's return to the United States for the purpose of participating in further proceedings.

*PETITION FOR REVIEW GRANTED,*
*ORDER OF REMOVAL VACATED, AND*
*REMANDED WITH DIRECTIONS*